UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HIS TABERNACLE FAMILY CHURCH, INC. and MICHEAL SPENCER,<br><br>*Plaintiffs*,<br><br>v.<br><br>STEVEN A. NIGRELLI, Acting Superintendent of the New York State Police, in his official and individual capacities; WEEDEN A. WETMORE, District Attorney for the County of Chemung, New York, in his official and individual capacities; and MATTHEW VAN HOUTEN, District Attorney for the County of Tompkins, New York, in his official and individual capacities,<br><br>*Defendants*. | **Case No. 6:22-cv-06486** |

**REPLY MEMORANDUM IN SUPPORT OF
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ...................................................................................................................1

ARGUMENT............................................................................................................................2

I.   Plaintiffs Are Likely To Succeed On The Merits Of Their Claims ...................................2

   A.   S51001 Unlawfully Imposes Special Burdens on Religious Exercise ....................2

   B.   By Dictating Rules for Worship Services, S51001 Encroaches on Church Autonomy..................................................................................................................6

   C.   New York's Houses-of-Worship Firearm Ban Flouts the Second Amendment ................................................................................................................7

II.  The Remaining Factors All Favor Injunctive Relief ..........................................................10

CONCLUSION .......................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Employment Div. v. Smith*,
　494 U.S. 872 (1990) ..................................................................................................5

*Gonzalez v. Carhart*,
　550 U.S. 124 (2007) ..................................................................................................2

*Green v. DOJ*,
　2022 WL 17419644 (D.C. Cir. 2022)........................................................................2

*Hardaway v. Nigrelli*,
　2022 WL 16646220 (W.D.N.Y. Nov. 3, 2022) .......................................................10

*Heller v. District of Columbia*,
　554 U.S. 570 (2008) ..................................................................................................8

*Isaacson v. Horne*,
　716 F.3d 1213 (9th Cir. 2015) ...................................................................................2

*Jacoby & Meyers, LLP v. Presiding Justices*,
　852 F.3d 178 (2d Cir. 2017) ......................................................................................2

*Kennedy v. Bremerton Sch. Dist.*,
　142 S.Ct. 2407 (2022)...................................................................................1, 4, 5, 7

*Lemon v. Kurtzman*,
　403 U.S. 602 (1971) ..................................................................................................7

*Masterpiece Cakeshop Ltd. v. Colo. Civil Rights Comm'n*,
　138 S.Ct. 1719 (2018)................................................................................................5

*McDonald v. City of Chicago*,
　561 U.S. 742 (2010) ..................................................................................................9

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
　142 S.Ct. 2111 (2022)....................................................................................1, 7, 8, 9

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
　140 S.Ct. 2049 (2020)................................................................................................6

*Picard v. Magliano*,
　42 F.4th 89 (2d Cir. 2022) .........................................................................................2

*Rogers v. Grewal*,
　140 S.Ct. 1865 (2020)................................................................................................9

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
　141 S.Ct. 63 (2020) (per curiam)........................................................................1, 3, 5

*Sherbert v. Verner*,
　374 U.S. 398 (1963) ..................................................................................................4

*Tandon v. Newsom*,
　141 S.Ct. 1294 (2021) (per curiam).................................................................3, 5, 6

*Upsolve, Inc. v. James*,
    2022 WL 1639554 (S.D.N.Y. May 24, 2022) .................................................................... 2

*Winter v. Wolnitzek*,
    834 F.3d 681 (6th Cir. 2016) ............................................................................................ 2

**Statute**

N.Y. Penal Law §265.01-d(1) ................................................................................................. 3

N.Y. Penal Law §265.01-e(2)(c) ......................................................................................... 2, 3

**Other Authority**

Order, *Hardaway v. Nigrelli*, No. 22-2933, ECF 53 (2d Cir. Dec. 7, 2022) ................................ 10

**INTRODUCTION**

New York enacted a law that puts Pastor Spencer and his congregants to a choice: forgo their First Amendment rights to worship at the Church or forgo their Second Amendment rights to bear arms for self-defense. They cannot lawfully exercise both rights at the same time. Under settled Supreme Court precedent, emanating largely from cases that New York itself lost, the state has the burden to justify that state-mandated choice thrice over. Because the law imposes restrictions on houses of worship that it does not impose on all comparable entities, the state must prove that it satisfies strict scrutiny. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63 (2020) (per curiam). And because the law both interferes with the autonomy of houses of worship and prohibits the carrying of firearms outside the home, the state must identify an enduring historical tradition of comparable restrictions. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022); *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2428 (2022).

Unable to meet either burden, defendants devote the bulk of their brief to trying to evade them. But try as they do, they cannot escape the reality that S51001 plainly burdens both First and Second Amendment activity. Defendants insist otherwise only by ignoring the clear holdings and reasoning of the very cases New York lost. And no amount of revisionist history can change the reality that there simply is no historical tradition, enduring or otherwise, of prohibiting houses of worship from permitting their congregants to carry firearms for self-defense. Plaintiffs are thus ultimately forced to argue they simply know better than houses of worship how best to propagate and protect the faith. That argument succeeds only in underscoring that S51001 is as much of an affront to the First Amendment as this Court already recognized it is to the Second. The Court should enjoin application of the law under both Amendments and ensure it cannot be enforced now that defendants have successfully obtained a stay of the *Hardaway* injunction pending appeal.

# ARGUMENT

**I.     Plaintiffs Are Likely To Succeed On The Merits Of Their Claims.**

Defendants begin by arguing that because Pastor Spencer and the Church bring a pre-enforcement challenge to N.Y. Penal Law §265.01-e(2)(c), this lawsuit "can only be brought as a facial challenge." NY.Br.6-7. That is both wrong and beside the point. First, courts routinely entertain as-applied pre-enforcement challenges. *See, e.g.*, *Gonzalez v. Carhart*, 550 U.S. 124, 167 (2007); *Picard v. Magliano*, 42 F.4th 89, 97-102 (2d Cir. 2022); *Green v. DOJ*, 2022 WL 17419644, at *2, 4 (D.C. Cir. 2022); *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016); *Isaacson v. Horne*, 716 F.3d 1213, 1221 (9th Cir. 2015). Contrary to defendants' suggestion, the Second Circuit did not and could not purport to overrule its own binding precedent, open up a split with countless courts across the country, and part ways with the Supreme Court in a single sentence in *Jacoby & Meyers, LLP v. Presiding Justices*, 852 F.3d 178 (2d Cir. 2017). *See Upsolve, Inc. v. James*, 2022 WL 1639554, at *5-6 (S.D.N.Y. May 24, 2022) (rejecting same argument). To be sure, as-applied pre-enforcement challenges may be disfavored when it is unclear whether a law prohibits the conduct in which a plaintiff seeks to engage. But there is no dispute here that §265.01-e(2)(c) prohibits Pastor Spencer and the Church's congregants from carrying firearms on Church premises; defendants posit no theory under which the law might be construed otherwise. *See* NY.Br.6. But in all events, this debate is academic, as §265.01-e(2)(c) *is* unconstitutional on its face. This Court already recognized as much vis-à-vis the Second Amendment in *Hardaway*, and the law is just as unconstitutional under the First Amendment's Religion Clauses.

   **A.     S51001 Unlawfully Imposes Special Burdens on Religious Exercise.**

Pastor Spencer and members of his congregation wish to carry firearms to protect themselves and their fellow congregants while they worship, and they sincerely believe that they have a religious obligation to do so. By making it a Class E felony punishable up to four years in

prison for them to carry a firearm in the Church, S51001 prohibits them from engaging in conduct that they believe their faith compels. And whereas the law threatens churchgoers with criminal liability for carrying a firearm in "any place of worship or religious observation," N.Y. Penal Law §265.01-e(2)(c), it absolves New Yorkers located elsewhere engaging in *secular* activities of this no-carry restriction, *id.* §265.01-d(1). The law thus "single[s] out houses of worship for especially harsh treatment," and so must satisfy strict scrutiny. *Roman Catholic Diocese*, 141 S.Ct. at 66.

There can be no serious dispute that defendants cannot satisfy strict scrutiny—as evidenced by the fact that they relegate their entire argument on that score to a footnote. As the Supreme Court recently reiterated, to satisfy strict scrutiny the state "must do more than assert that certain factors are always present in worship, or always absent from the other secular activities." *Tandon v. Newsom*, 141 S.Ct. 1294, 1296 (2021) (per curiam). Yet defendants have not even done that. They suggest that prohibiting houses of worship from permitting firearms protects worshipers from "spontaneous violence and accidental injuries and deaths." NY.Br.12 n.5. But they make no effort to substantiate the implausible notions that churchgoers are more prone to engage in "spontaneous violence," or less likely to exercise due care with firearms, than New Yorkers who spend their Sunday mornings at coffee shops or salons. To the contrary, defendants deem these risks inherent in "ubiquitous weapons possession," *id.*, which dooms any effort to prove that "ubiquitous weapons possession" is somehow "more dangerous" in churches than in shopping malls, gas stations, or office buildings, *Tandon*, 141 S.Ct. at 1297. And while the state undoubtedly has a compelling interest in protecting houses of worship and their congregants from "targeted mass shootings," NY.Br.12 n.5, defendants fail to explain how depriving houses of worship of the ability to decide how best to defend themselves against such attacks even furthers that interest, let alone is the least restrictive means of doing so. At a minimum, the state had at its disposal the less

3

restrictive means of offering to *supply* the security it has denied, rather than leaving any house of worship that cannot afford state-sanctioned security guards a sitting duck.

Unable to satisfy strict scrutiny, defendants spend the bulk of their brief resisting it. They first make the bewildering claim that S51001 does not burden plaintiffs' religious exercise at all because plaintiffs purportedly "do not allege that carrying a firearm is ***itself*** an element of their religious practice." NY.Br.8. That argument is misguided at every turn. At the outset, S51001 burdens religious exercise regardless of whether the desire to carry firearms in church is rooted in the sacred or the secular. By its terms, the law imposes a condition on the ability to practice one's faith. And not just any condition—a government-mandated choice between attending religious services and exercising a fundamental constitutional right: Pastor Spencer and the Church's congregants may not carry firearms for self-defense while they worship. If it was "too late in the day" more than half a century ago "to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege," *Sherbert v. Verner*, 374 U.S. 398, 404 (1963), then it is far too late to doubt that they may be infringed by laws that condition the exercise of one constitutional right on the surrender of another.

At any rate, to the extent defendants mean to suggest that the desire of Pastor Spencer and his congregants to carry firearms at the Church is not religiously motivated, that is belied by their declarations attesting to sincere religious beliefs—nowhere questioned by defendants—that they have a duty to carry firearms to protect their fellow congregants. Spencer Decl. ¶¶22-24; Pruitt Decl. ¶¶14-16. Prohibiting one from engaging in conduct that he sincerely believes his faith to compel is a textbook burden on free exercise rights. *See, e.g.*, *Kennedy*, 142 S.Ct. at 2422. To the extent defendants suggest that plaintiffs' religious beliefs are mistaken, "[c]ivil authorities, whether 'high or petty,' bear no license to declare … whether an adherent has 'correctly perceived'

4

the commands of his religion." *Masterpiece Cakeshop Ltd. v. Colo. Civil Rights Comm'n*, 138 S.Ct. 1719, 1738 (2018) (Gorsuch, J., concurring). And to the extent defendants suggest that the Free Exercise Clause protects only religious beliefs that are "an element" of worship services, NY.Br.8, that is wrong too. As the Supreme Court just reminded, the Free Exercise Clause "does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of (or abstention from) physical acts." *Kennedy*, 142 S.Ct. at 2421. Finally, defendants' blithe suggestion that plaintiffs can hire state-approved security guards, NY.Br.9, once again denies plaintiffs' sincere religious beliefs that *they* have a duty protect the flock. And in all events, forcing houses of worship (but not other private property owners) to hire people to provide what their congregants are willing and able to provide for free imposes an obvious burden on religious exercise.

Defendants next insist that S51001 is "a neutral law of general applicability," and hence excused from strict scrutiny under *Employment Division v. Smith*, 494 U.S. 872 (1990), because it prohibits some *other* secular private property owners from permitting the carrying of firearms. *See* NY.Br.11-12. Apparently, defendants neglected to read *Tandon* (which they also conspicuously neglect to cite): "Government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S.Ct. at 1296. That New York "treats some comparable secular business or other activities as poorly as or even less favorably than" houses of worship is therefore "no answer." *Id.* All that matters is whether it treats more favorably *some* private properties that present similar risks of gun violence or misuse, whether premeditated, spontaneous, or accidental. *See Roman Catholic Diocese*, 141 S.Ct. at 66-67. Defendants' own arguments confirm that S51001 does, as houses of worship, "theatres, concert

5

venues, stadiums, museums, private universities, private schools, bars, banquet halls, exhibits, and conference centers" are hardly the only places in New York that could be characterized as "often busy, crowded, and dense locations where individuals are often seated or moving slowly." NY.Br.11. Defendants thus have "the burden to establish that the challenged law satisfies strict scrutiny," *Tandon*, 141 S.Ct. at 1296—a burden that they do not and cannot meet.

### B. By Dictating Rules for Worship Services, S51001 Encroaches on Church Autonomy.

The First Amendment's Religion Clauses "broad[ly]" prohibit states from interfering with the right of religious institutions to decide "matters of internal government" themselves. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049, 2060-61 (2020). S51001 entrenches on the Church's autonomy by dictating what worshipers may possess while engaged in worship and restricting how the Church may protect worshippers in its sanctuaries. This encroachment on religious autonomy can survive (if at all) only if it is consistent with our Nation's historical tradition, or at the very least satisfies strict scrutiny. Defendants prove neither. *See* Part I.C, I.A.

Instead, they insist that houses of worship possess autonomy only vis-à-vis the "hiring and firing of church personnel." NY.Br.13. But as the Supreme Court recently explained, the "ministerial exception" that protects a church's hiring and firing decisions is simply an *application* of the "broad" rule that the First Amendment "protects the[] autonomy" of a religious institution "with respect to … the institution's central mission." *Our Lady of Guadalupe*, 140 S.Ct. at 2060. And there are few things more central to a religious institution's mission than its ability to protect those who participate in that mission while they do so. That is especially true when, as here, a house of worship attests that it has a sincere religious belief that it has a duty to protect its flock. *Cf. id.* at 2065 (noting that many Protestant churches founded schools because they "viewed education as a religious obligation"). After all, it is for Pastor Spencer and the Church, not New York, to decide what is "integral" to the propagation and protection of the faith. NY.Br.14 n.6.

6

Defendants ignore the teachings of *Our Lady of Guadalupe* in favor of an amorphous "entanglement" test under *Lemon v. Kurtzman*, 403 U.S. 602, 613 (1971). NY.Br.13-14. But the Supreme Court made emphatically clear just this past Term that the *Lemon* test is no longer good law, and "that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" *Kennedy*, 142 S.Ct. at 2427. Defendants thus must "demonstrate that the regulation is consistent with this Nation's historical tradition" of regulation of houses of worship, *Bruen*, 142 S.Ct. at 2126—a burden that they do not even attempt to shoulder under the First Amendment and that they emphatically fail to satisfy under the Second. *See infra* Part I.C. Indeed, the notion that the founding generation would have tolerated a law that forced houses of worship concerned for their safety to invite state-registered security guards to monitor their services does not pass the straight-face test. At the very least, defendants must prove that the state's incursion on religious autonomy passes strict scrutiny, which they cannot do either. *See supra* Part I.A.

### C. New York's Houses-of-Worship Firearm Ban Flouts the Second Amendment.

Plaintiffs' Second Amendment claim is likely to succeed for the reasons this Court explained in *Hardaway*. By seeking to carry a firearm while worshipping at the Church, Pastor Spencer and members of his congregation unquestionably seek to engage in conduct covered by the Second Amendment's text. *Bruen*, 142 S.Ct. at 2135. Their right to do so is thus "presumptively protect[ed]," and defendants must prove that banning firearms in houses of worship is "part of an enduring American tradition of state regulation." *Id.* at 2126, 2155. Defendants resist that proposition, insisting that so-called "sensitive places" laws "fall outside the textual 'scope of the Second Amendment.'" NY.Br.15. That claim is impossible to reconcile with *Bruen*, which made clear beyond cavil that the state must prove that the places it deems "sensitive" fit within the Nation's historical tradition. *See, e.g.*, *Bruen*, 142 S.Ct. at 2134 ("there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place'").

7

Defendants' efforts to meet that burden fall far short. They identify no law banning firearms in churches in America until 1870, and even then all they can muster are laws from three cities, three states, and two territories—all enacted between 1870 and 1890. NY.Br.17; Charles Dec. ¶¶17-18. Defendants try to make up for the dearth of historical analogues by suggesting that other states did not need such laws "because they already had on their books broad prohibitions of public carry." NY.Br.17 n.10. But that claim rests entirely on laws that *Bruen* authoritatively construed *not* to be "broad prohibitions on … public carry." *See* 142 S.Ct. at 2142-50. Defendants' reliance on state court decisions upholding the few church bans that were passed in the late nineteenth century suffers from a similar deficiency: They are largely the same decisions that both *Bruen* and *Heller* dismissed as "operat[ing] under a fundamental misunderstanding of the right to bear arms." *Id.* at 2155; *see also id.* at 2153; *Heller v. District of Columbia*, 554 U.S. 570, 632 (2008). In fact, historical tradition reflects that carrying firearms to church was not only permissible, but encouraged and sometimes even mandated. *See* Opening.Br.20-21. Defendants make no effort to reconcile their contrary claim with the *Knight* court's conclusion that carrying arms in church was not a crime. Opening.Br.19-20. And they try to dismiss early laws requiring the carrying of firearms to church as "intended to further readiness of militias," NY.Br.22, but that misses the point: Such laws would not have existed if, as they tell it, churches were widely considered to be "sensitive places" where carrying firearms was so dangerous as to be verboten.

Defendants are thus forced to retreat to a higher level of generality, insisting that churches are comparable to *other* places where firearms purportedly were prohibited. NY.Br.18. That argument suffers from two glaring legal deficiencies. First, reasoning by historical analogy is reserved for "cases implicating unprecedented societal concerns or dramatic technological changes," *Bruen*, 142 S.Ct. at 2132, and the carrying of firearms in churches implicates neither.

8

Second, defendants' sweeping claim that there is an established tradition of prohibiting firearms in any "places where people gather in large crowds and confined places," NY.Br.18, once again rests either on laws that long post-date the founding or on giving earlier laws constructions that *Bruen* rejected. *See, e.g.*, 142 S.Ct. at 2139-50.[1]  Indeed, the notion that "the presence of the public" is what makes a location "sensitiv[e]," NY.Br.18, is squarely in the teeth of *Bruen*, which recognized a *right* to carry firearms in places where the public is present.  Even if defendants could reason by historical analogy, then, the purported analogues they identify would not help them.

Defendants close by arguing that they need not produce historical analogues at all, because all that really matters is "whether the Second and Fourteenth Amendment's ratifiers could naturally have concluded that States possessed the authority, consistent with the Constitution, to prohibit weapons in particular areas if the legislative need and will arose." NY.Br.21.  Setting aside the obvious conflict with *Bruen*, how exactly they expect to answer that question without looking to what laws the founding generation actually tolerated, they do not explain.  They instead posit that surely (at least in their estimation) the founding generation would have been content to suppress Second Amendment rights in service of "other fundamental rights" that defendants apparently consider more "valuable." *Id.*  That is a peculiar argument to make when plaintiffs have attested that the challenged law *impedes* their First Amendment rights.  *See supra* Part I.A-B.  It is also at profound odds with the First Amendment, as whatever may be said of government-run institutions like "polling places, legislative assemblies, and courts," NY.Br.21, the First Amendment makes emphatically clear that it is for houses of worship, not the government, to decide what best

---

[1] Notably, while the state's expert touts that his work has "been cited by the Supreme Court," Charles Decl. ¶¶2, 6, he neglects to mention that it has been cited favorably only in *dissenting* opinions.  *See Bruen*, 142 S.Ct. at 2180-98 (Breyer, J., dissenting); *McDonald v. City of Chicago*, 561 U.S. 742, 914 (2010) (Breyer, J., dissenting); *cf. Rogers v. Grewal*, 140 S.Ct. 1865, 1870 n.3 (2020) (Thomas, J., dissenting from denial of certiorari) (citing Charles only to reject his analysis).

promotes their faith. Defendants' argument thus succeeds only in underscoring that banning firearms in houses of worship violates both the First and the Second Amendment.

## II. The Remaining Factors All Favor Injunctive Relief.

This Court already found that a similar set of plaintiffs faced irreparable harm absent an injunction and the public interest favors enjoining this law. *Hardaway v. Nigrelli*, 2022 WL 16646220, at *17-18 (W.D.N.Y. Nov. 3, 2022). Nothing defendants say alters either conclusion. While they suggest the *Hardaway* injunction gives plaintiffs all the protection they need, they nowhere mention that injunction has now been stayed except with respect to "persons who have been tasked with the duty to keep the peace at places of worship." Order, No. 22-2933, ECF 53 (2d Cir. Dec. 7, 2022). Whatever the contours of that exception may be, defendants do not seem to understand it to permit Pastor Spencer or his congregation to carry firearms to services. *See* NY.Br.23 (stating only that the injunction no longer prevents "Plaintiffs from *engaging or designating an appropriate person* to keep the peace in their houses of worship" (emphasis added)). The District Attorney defendants promise not to prosecute plaintiffs. ECF 40-1; ECF 41; NY.Br.10, 23. But even if they could ignore the enforcement priorities of state officials, they cannot bind their successors, and nothing prevents them from changing their mind at any time. Finally, defendants allude to the dangers of "unchecked carrying of deadly weapons in sensitive locations." NY.Br.26. But they make zero effort to substantiate their assumption that those dangers emanate from law-abiding concealed-carry permit holders who wish to carry firearms to church while they worship, rather than from those who are undeterred by the myriad laws the state already has on the books prohibiting criminal misuse of firearms. Defendants' arguments thus just reinforce that the law does not even meaningfully further the public interests they invoke.

## CONCLUSION

This Court should grant plaintiffs' motion for a preliminarily injunction.

Dated: December 16, 2022

Respectfully submitted,

/s/ Anjan K. Ganguly

DAVID J. HACKER
JEREMY DYS*
KEISHA RUSSELL
RYAN GARDNER*
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway
Suite 1600
Plano, TX 75075
(972) 941-4444

JORDAN E. PRATT*
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Avenue N.W.
Suite 1410
Washington, D.C. 20003
(972) 941-4444

ANJAN K. GANGULY
GANGULY BROTHERS, PLLC
140 Allens Creek Road
Suite 220
Rochester, NY 14618
(585) 232-7747

ERIN E. MURPHY*
ANDREW C. LAWRENCE*
TREVOR W. EZELL*
NICHOLAS M. GALLAGHER*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900

*Pro hac vice

*Counsel for Plaintiffs*