# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

HIS TABERNACLE FAMILY
CHURCH, INC. and MICHEAL
SPENCER,

        *Plaintiffs*,

        v.

STEVEN A. JAMES, Superintendent of
the New York State Police, in his official
and individual capacities; WEEDEN A.
WETMORE, District Attorney for the
County of Chemung, New York, in his
official and individual capacities; and
MATTHEW VAN HOUTEN, District
Attorney for the County of Tompkins,
New York, in his official and individual
capacities,

        *Defendants*.

**Case No. 6:22-cv-06486**

# MEMORANDUM IN SUPPORT OF
# <u>PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................iii

INTRODUCTION .......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 5

     A.    Legal Background................................................................................. 5

     B. Factual & Procedural Background ............................................................. 7

ARGUMENT .................................................................................................................. 10

I.    Plaintiffs' Requested Attorney's Fees Are Reasonable ................................... 11

     A.    The Requested Hourly Rates Are Reasonable ..................................... 12

     B.    The Hours Expended Are Reasonable .................................................. 23

II.    Plaintiffs' Requested Costs Are Reasonable ..................................................... 25

CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*28th Highline Assocs., LLC v. Roache*,
    2021 WL 12313375 (S.D.N.Y. Dec. 7, 2021) ............................................................. 4, 23, 24

*Abascal v. Fleckenstein*,
    2014 WL 7075580 (W.D.N.Y. Dec. 15, 2014)...................................................................... 13

*Agudath Israel of Am. v. Cuomo*,
    141 S.Ct. 889 (2020)........................................................................................................... 18

*Am. Legion v. Am. Humanist Ass'n*,
    588 U.S. 29 (2019).............................................................................................................. 17

*Antonyuk v. Chiumento*,
    89 F.4th 271 (2d Cir. 2023) .................................................................................................. 3

*Antonyuk v. Hochul*,
    639 F.Supp.3d 232 (N.D.N.Y. 2022)................................................................................... 21

*Antonyuk v. James*,
    120 F.4th 941 (2d Cir. 2024) .......................................................................................... 4, 10

*Antonyuk v. James*,
    144 S.Ct. 2709 (2024).......................................................................................................... 9

*Arbor Hill Concerned Citizens Neighborhood Ass'n*
    *v. Cnty. of Albany & Albany Cnty. Bd. of Elections*,
    522 F.3d 182 (2d Cir. 2008)......................................................................................... *passim*

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
    537 F.3d 132 (2d Cir. 2008).......................................................................................... 12, 13

*Capax Discovery, Inc. v. AEP RSD Invs., LLC*,
    2023 WL 140528 (W.D.N.Y. Jan. 10, 2023).................................................................. 16, 17

*Carey v. Piphus*,
    435 U.S. 247 (1978)......................................................................................................... 1, 12

*Carson v. Makin*,
    596 U.S. 767 (2022)............................................................................................................ 17

*Christian v. Nigrelli*,
    642 F.Supp.3d 393 (W.D.N.Y. 2022) .................................................................................. 21

*Christiansburg Garment Co. v. EEOC*,
    434 U.S. 412 (1978)............................................................................................................... 5

*Clarke v. Frank,*
    960 F.2d 1146 (2d Cir. 1992) ................................................................. 11

*Espino v. Besteiro,*
    708 F.2d 1002 (5th Cir. 1983) ................................................................. 1

*Evans v. Jeff D.,*
    475 U.S. 717 (1986) ................................................................................ 1

*Franciscan All., Inc. v. Becerra,*
    681 F.Supp.3d 631 (N.D. Tex. 2023) ............................................... 20, 22

*Furtado v. Bishop,*
    635 F.2d 915 (1st Cir. 1980) ............................................................. 1, 24

*Grant v. Martinez,*
    973 F.2d 96 (2d Cir. 1992) ............................................................... 23, 24

*Hardaway v. Nigrelli,*
    639 F.Supp.3d 422 (W.D.N.Y. 2022) ..................................................... 21

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ..................................................................... 1, 12, 13

*Hines v. City of Albany,*
    862 F.3d 215 (2d Cir. 2017) .................................................................. 24

*Johnson v. AutoZone, Inc.,*
    2019 WL 2288111 (N.D. Cal. May 29, 2019) ........................................ 22

*Johnson v. Georgia Highway Express, Inc.,*
    488 F.2d 714 (5th Cir. 1974) ...................................................... 12, 14, 20, 21

*Kennedy v. Bremerton School District,*
    597 U.S. 507 (2022) .............................................................................. 17

*Leasing Serv. Corp. v. Dickens,*
    1988 WL 151297 (S.D.N.Y. Oct. 20, 1988) ........................................... 22

*LeBlanc-Sternberg v. Fletcher,*
    143 F.3d 748 (2d Cir. 1998) .................................................................. 25

*Lilly v. City of New York,*
    934 F.3d 222 (2d Cir. 2019) ......................................................... 4, 11, 12

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
    591 U.S. 657 (2020) .............................................................................. 17

*Maceira v. Pagan*,
   698 F.2d 38 (1st Cir. 1983) ........................................................................ 5, 20, 21

*Maine v. Thiboutot*,
   448 U.S. 1 (1980) ................................................................................................. 1

*Meeks v. City of Rochester*,
   2023 WL 3962828 (W.D.N.Y. June 12, 2023) ......................................................... 18

*Millea v. Metro-N. R.R. Co.*,
   658 F.3d 154 (2d Cir. 2011) .................................................................................. 11

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ........................................................................................ 12, 17

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   142 S.Ct. 2111 (2022) .................................................................................... 2, 5, 17

*N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*,
   590 U.S. 336 (2020) ............................................................................................. 18

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Nigrelli*,
   2023 WL 6200195 (N.D.N.Y. Sept. 22, 2023) .......................................................... 2

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010) ............................................................................................. 17

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
   141 S.Ct. 63 (2020) ........................................................................................... 2, 5

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
   No. 20-cv-4844 (E.D.N.Y. July 20, 2021) ................................................................. 2

*Rozell v. Ross-Holst*,
   576 F.Supp.2d 527 (S.D.N.Y. 2008) ....................................................................... 15

*S. Bay United Pentecostal Church v. Newsom*,
   2021 WL 2250818 (S.D. Cal. June 1, 2021) ............................................................. 22

*Schneider ex rel. A.T. v. City of Buffalo*,
   2021 WL 5042502 (W.D.N.Y. Oct. 29, 2021) .......................................................... 23

*Simmons v. N.Y.C. Transit Auth.*,
   575 F.3d 170 (2d Cir. 2009) .............................................................................. 19, 22

*Tomazzoli v. Sheedy*,
   804 F.2d 93 (7th Cir. 1986) .................................................................................. 15

*United States v. Rahimi*,
  602 U.S. 680 (2024) ..................................................................................................... 9

*Weyant v. Okst*,
  198 F.3d 311 (2d Cir. 1999) ...................................................................................... 23

**Statutes**

42 U.S.C. §1988(b) ...................................................................................................... 10

N.Y. Penal Law §265.01-d(1) ........................................................................................ 6

N.Y. Penal Law §265.01-e ............................................................................................. 6

N.Y. Penal Law §265.01-e(1) ........................................................................................ 6

N.Y. Penal Law §265.01-e(2)(a) .................................................................................. 6, 8

N.Y. Penal Law §265.01-e(q) ........................................................................................ 6

**Other Authorities**

Giavanni Alves, *N.Y.'s New Gun Control Laws*, Staten Island Live (July 9, 2022),
  https://archive.ph/7by4T ............................................................................................. 5

*Appellate Law | USA*, Chambers & Partners, https://rebrand.ly/5d75fx8
  (last visited Feb. 18, 2025) ........................................................................................ 16

*Appellate*, Chambers Associates, https://rebrand.ly/2e1hhya (last visited Feb. 18, 2025) ........... 19

Stephanie H. Barclay, *The Religion Clauses After* Kennedy
  v. Bremerton School District, 108 Iowa L. Rev. 2097 (2023) .................................... 18

Decl. of B. Robison, *Franciscan All. Inc. v. Becerra*, No. 16-cv-108
  (N.D. Tex. filed Dec. 23, 2022) ................................................................................. 16

Decl. of G. Schaerr, *Franciscan All., Inc. v. Becerra*, No. 16-cv-108
  (N.D. Tex. filed Dec. 23, 2022) ................................................................................. 16

Editorial Board, *You Won Your Gun Case. You're Fired.*  Wall St. J.  (June 23, 2022),
  https://rebrand.ly/oty9upe ......................................................................................... 20

Final Judgment, *Harvest Rock Church, Inc. v. Newsom*, No. 20-cv-6414
  (C.D. Cal. May 14, 2021) ........................................................................................... 23

David Lat, *Paul Clement Leaves Kirkland & Ellis Amid A Dispute Over Gun Cases*,
  Original Jurisdiction (June 24, 2022), https://bit.ly/41wRkHK ................................. 20

Steven Lerner, *Appellate Group of the Year:  Clement & Murphy*,
   Law360 (Feb. 11, 2025), https://rebrand.ly/cqy6aya ............................................................... 17

Victoria Ostrander, *Finalists Announced for the National Law Journal
   Legal Awards 2024*, Nat'l L. J. (Aug. 22, 2024), https://archive.ph/FnT4Q ............................ 17

Press Release, N.Y. Governor's Press Office, *Governor Hochul Signs Landmark
   Legislation to Strengthen Gun Laws and Bolster Restrictions on Concealed Carry
   Weapons in Response to Reckless Supreme Court Decision* (July 1, 2022)
   https://archive.ph/wGx1M ....................................................................................................... 7

Statement by First Deputy Superintendent of State Police Steven Nigrelli,
   *Governor Hochul Delivers a Press Conference on Gun Violence Prevention*
   (Aug. 31, 2022), https://bit.ly/3Yr7Ggp ................................................................................ 7

## INTRODUCTION

Congress enacted 42 U.S.C. §1983 in 1871 to provide a federal cause of action against state officials who deprive individuals of their constitutional rights while acting under state law. Approximately a century later, in 1976, Congress enacted another provision—42 U.S.C. §1988—to enable prevailing plaintiffs in §1983 actions to recover their attorney's fees from the rights-violating defendant. That fee-shifting provision is designed not only to help "ensure 'effective access to the judicial process' for persons with civil rights grievances," *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), but also to further the critical purpose of deterring future constitutional violations. As the Supreme Court has explained, §1988 "provides … by no means inconsequential … assurance that agents of the State will not deliberately ignore [constitutional] rights." *Carey v. Piphus*, 435 U.S. 247, 257 n.11 (1978); *see also, e.g.*, *Espino v. Besteiro*, 708 F.2d 1002, 1010 (5th Cir. 1983) ("[T]he Supreme Court has recognized that since §1988 frequently adds substantial attorney's fees to a judgment, it has the desirable subsidiary effect of deterring violations of rights secured by §1983."); *Furtado v. Bishop*, 635 F.2d 915, 918 n.5 (1st Cir. 1980) (noting that §1988 "embodies" the "policy concern[]" of "deter[ring] civil rights violations by increasing defendants' liability"). Section 1988 thus is "'an integral part of the remedies necessary to obtain' compliance with §1983," *Maine v. Thiboutot*, 448 U.S. 1, 11 (1980), and is intended to function as a powerful weapon in "the arsenal of remedies available to combat violations of civil rights," *Evans v. Jeff D.*, 475 U.S. 717, 732 (1986).

Unfortunately, this legislative plan has not always worked as Congress envisioned. Notwithstanding the deterrent effect that §1988 is supposed to exert, some states regularly enact and enforce laws that violate their citizens' constitutional rights. That is in no small part because, as a practical matter, states that lose §1983 litigation often are not ordered to pay attorney's fees

calculated at the prevailing lawyers' market rates, but instead often receive substantial court-approved discounts. The upshot is that it is all too common for states to avoid fully internalizing the costs of their unconstitutional actions.

Cases involving the state of New York and its serial violations of the First and Second Amendments are illustrative. In 2020, the Supreme Court issued a decision admonishing the state that it could not single out places of worship for especially harsh treatment relative to comparable secular establishments (as the state had done during the COVID-19 pandemic). *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) (per curiam). Two years later, in 2022, the Supreme Court issued another decision admonishing the state that it could not prohibit law-abiding citizens from carrying firearms in public for self-defense unless they had a "special need" to do so (as the state had done for over a century). *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Although New York had to pay attorney's fees after both losses, it paid nowhere near full price. In *Bruen*, a district court permitted the state to pay just 35 cents on the dollar to the prevailing plaintiff's attorneys—as some of Plaintiffs' attorneys here know all too well since they found themselves on the short end of that decision despite securing a landmark civil-rights victory that effectively cost them their jobs at their former law firm. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Nigrelli*, 2023 WL 6200195 (N.D.N.Y. Sept. 22, 2023). And the plaintiff in *Roman Catholic Diocese* evidently saw the writing on the wall and settled for a similarly discounted sum. *See* Dkt.43, No. 20-cv-4844 (E.D.N.Y. July 20, 2021). Thus, New York—one of the wealthiest states in the Nation—managed to violate the First and Second Amendment rights of its citizens while paying less than $500,000 each time.

This dynamic—in which states are permitted to restrict the exercise of disfavored constitutional rights on the cheap—has only emboldened states like New York. This case is the

latest example in that troubling trend. Just days after *Bruen*, and only months after *Roman Catholic Diocese*, New York rushed out a sweeping set of novel restrictions on carrying firearms outside the home in a law known as the "Concealed Carry Improvement Act" (CCIA). As relevant here, the CCIA flatly banned the carrying firearms in places of worship, even though proprietors of comparable secular establishments could authorize the carrying of firearms on their property as they saw fit. Accordingly, even though the Supreme Court had only recently reminded New York to respect *both* the First Amendment *and* the Second Amendment, the CCIA's place-of-worship provision put New Yorkers—including Plaintiffs here, Pastor Micheal Spencer and His Tabernacle Family Church, Inc.—to an impossible choice: forgo your First Amendment rights to worship at the Church or forgo your Second Amendment rights to bear arms for self-defense.

Unwilling to make that choice, and fully aware that New York often defends its unconstitutional laws all the way up the appellate ladder, Plaintiffs retained a legal team that included not only an in-district attorney with knowledge of the practices and procedures in this district, but also out-of-district attorneys who are among the very few attorneys with the substantive skill set necessary here: specialists in First and Second Amendment litigation who are also expert appellate practitioners—and are actually willing to represent plaintiffs seeking to vindicate the constitutional rights at issue here, which many law firms are unwilling to do because the subject matter is considered too controversial. As the outcome of this litigation has confirmed, Plaintiffs made the right call. After Plaintiffs obtained a preliminary injunction in this Court on a short two-month timeline, *see* Dkt.56 at 2, the Second Circuit unanimously affirmed that injunction in an expedited appeal that produced a 261-page decision. Notably, the court of appeals ruled in Plaintiffs' favor even as it unanimously ruled *against* other plaintiffs challenging the very same law. *See Antonyuk v. Chiumento*, 89 F.4th 271, 346 (2d Cir. 2023), *certiorari granted and*

*judgment vacated on other grounds by Antonyuk v. James*, 144 S.Ct. 2709 (2024); *see also*

*Antonyuk v. James* (*Antonyuk III*), 120 F.4th 941, 1015 n.75 (2d Cir. 2024).   And in the aftermath

of those two resounding defeats, the state finally acquiesced and agreed to a stipulated order

entering a permanent injunction that forever bars the state from implementing or enforcing the

CCIA's place-of-worship provision against Plaintiffs.  *See* Dkt.81 at 2.  Simply put, Plaintiffs'

attorneys secured all that their clients ever wanted.

Because Plaintiffs' victory on the merits is so clear, this Court has already concluded that

"Plaintiffs are a 'prevailing party' under 42 U.S.C. §1988" and are "entitled to their reasonable

attorneys' fees."  Dkt.81 at 2.  The lone task remaining for the Court is to calculate the precise

"amount of reasonable attorneys' fees" that Plaintiffs should receive.  Dkt.81 at 2.  Under Second

Circuit law, that undertaking requires the Court to multiply each attorney's "reasonable hourly

rate" by the "number of hours reasonably expended," and the Court has considerable discretion in

making those determinations.  *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019).   Here,

the Court should determine that the reasonable hourly rates are the customary hourly rates charged

by Plaintiffs' attorneys, as those are the rates that "a paying client would be willing to pay" to

achieve complete victory in a complex and time-sensitive constitutional case like this one that

everyone understood would end up in a high-stakes appeal.  *Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d

Cir. 2008).  And the hours that Plaintiffs' attorneys in fact expended are the hours reasonably

expended, as underscored by the indisputably favorable result that they secured.  *See, e.g.*, *28th*

*Highline Assocs., LLC v. Roache*, 2021 WL 12313375, at *5 (S.D.N.Y. Dec. 7, 2021) ("The

strongly favorable results obtained … support a finding that the hours billed were reasonable.").

The attorney's fees that Plaintiffs are requesting thus amount to $817,636.50 for 699.7 hours of work, along with another $7,166.60 to reimburse costs. This Court should award those fees in full—without giving the state any undeserved discount—and make clear that New York cannot repeatedly single out certain constitutional rights for disfavored treatment and bank on a haircut when paying attorney's fees. Doing so will honor Congress' intent in §1988 to hold "violator[s] of federal law" accountable, *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978), and will better enable "those in smaller communities" to "obtain[] the experienced legal counsel they may need" when seeking to vindicate constitutional rights that the government would rather suppress, *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983).

## STATEMENT OF FACTS

### A.    Legal Background

As Plaintiffs have previously explained, few states have flouted their First and Second Amendment obligations in recent years as audaciously as New York. In November 2020, the Supreme Court held in *Roman Catholic Diocese* that, in response to the COVID-19 pandemic, New York could not "single out houses of worship for especially harsh treatment" as compared to secular establishments. 592 U.S. at 17. And in June 2022, the Supreme Court held in *Bruen* that New York could not continue to prohibit law-abiding citizens with ordinary self-defense needs from exercising their Second Amendment right to keep and bear arms in public for self-defense. *See* 597 U.S. at 71.

With the ink on *Bruen* still drying, New York embarked on a campaign "to offset the impact of the court's decision"— in a way that neutered religious liberty too. Giavanni Alves, *N.Y.'s New Gun Control Laws*, Staten Island Live (July 9, 2022), https://archive.ph/7by4T. In July 2022— just eight days after the Supreme Court issued *Bruen* and just one Supreme Court Term removed

from *Roman Catholic Diocese*—New York enacted the CCIA, which imposed far-reaching new restrictions on where law-abiding citizens may carry firearms by designating large swathes of the state "sensitive places."  One of the "sensitive locations" where the state prohibited firearms was "any place of worship or religious observation."  Thus, under the CCIA, New York law provided:

> A person is guilty of criminal possession of a firearm, rifle or shotgun in a sensitive location when such person possesses a firearm, rifle or shotgun in or upon a sensitive location, and such person knows or reasonably should know such location is a sensitive location.  For the purposes of this section, a sensitive location shall mean … any place of worship or religious observation[.]

N.Y. Penal Law §265.01-e(1), (2)(c).  Although the CCIA defined "sensitive location" to include certain other areas—*e.g.*, government buildings and polling places, *see id.* §265.01-e(2)(a), (q)—it created a wide exception for private property, provided that it has no religious affiliation.  *See id.* §265.01-d(1) (authorizing owners or lessees of secular private property authority authorize carrying firearms on their property by posting "clear and conspicuous signage" or "otherwise giv[ing] express consent").

The CCIA made clear that severe penalties would greet those who violated the sensitive-place provision, including the place-of-worship provision.  Possession of a firearm in any "sensitive location," the CCIA declared, is a Class E felony if one "knows or reasonably should know such location is a sensitive location."  *Id.* §265.01-e.  Thus, the CCIA made it a felony in New York to carry a firearm in a place of worship, even if one had a license to carry a firearm and even if the place of worship expressly authorized carrying firearms on its property.  And once the CCIA took effect, New York officials confirmed that they had every intention of enforcing that novel law to its full extent.  In a statement announcing that she had signed the CCIA, Governor Hochul—after first denouncing *Bruen* as a "reckless" decision that necessitated a "bold" response from New York—warned that "[i]ndividuals who carry concealed weapons in sensitive locations

or in contravention of the authority of an owner of private property will face criminal penalties." Press Release, N.Y. Governor's Press Office, *Governor Hochul Signs Landmark Legislation to Strengthen Gun Laws and Bolster Restrictions on Concealed Carry Weapons in Response to Reckless Supreme Court Decision* (July 1, 2022) https://archive.ph/wGx1M.    Then-Acting Superintendent of the New York State Police Steven Nigrelli—a onetime Defendant here— reinforced the governor's warning and proclaimed that state law enforcement officers will have "zero tolerance" for violations of the CCIA:  "If you violate this law, you will be arrested.  Simple as that."  Statement by First Deputy Superintendent of State Police Steven Nigrelli, *Governor Hochul Delivers a Press Conference on Gun Violence Prevention* (Aug. 31, 2022), https://bit.ly/3Yr7Ggp (remarks at 38:01).

**B.    Factual & Procedural Background**

1.    Fearing arrest or other penalties just for exercising their constitutional rights, and cognizant that this dispute would not remain local for very long, Plaintiffs secured legal representation from a team that included attorneys at three law firms, two out-of-district and one in-district:  (1) Clement & Murphy, a law firm based in the Washington, D.C., area that is one of the very few law firms with considerable experience litigating First and Second Amendment cases on behalf of plaintiffs at all levels of the federal court system, (2) First Liberty Institute, a nationwide law firm based in the Dallas, Texas, area that is dedicated exclusively to defending religious liberty, and (3) Ganguly Brothers, a law firm based in Rochester, New York, that is familiar with local practices and procedures in this district.  *See* Exs.A-C.  With that legal team in place, Plaintiffs filed suit on November 3, 2022, challenging the place-of-worship provision as a violation of the First Amendment's Free Exercise and Establishment Clauses, the Second Amendment, and the Fourteenth Amendment's Equal Protection Clause.  *See* Dkt.1.  Plaintiffs

sought declaratory and injunctive relief, nominal damages, and attorney's fees under 42 U.S.C. §§1983 and 1988.  *See* Dkt.1 at 24-25.  A few days later, on November 8, 2022, Plaintiffs moved for a preliminary injunction.  *See* Dkt.13.  This Court subsequently set an expedited briefing schedule and scheduled a preliminary-injunction hearing for December 22, 2022, which (at the state's request) included extensive testimony from Pastor Spencer.  *See* Dkt.30, 53, 54.

On December 29, 2022, after agreeing with Plaintiffs' Free Exercise Clause, Establishment Clause, and Second Amendment arguments, this Court issued an order granting a preliminary injunction, which prohibited the state from implementing or enforcing the CCIA's place-of-worship provision against Plaintiffs.  *See* Dkt.56 at 2.  In addition, the order directed the parties to "follow an expedited briefing schedule in the Second Circuit."  Dkt.56 at 35.  As anticipated, the state appealed the Court's order to the Second Circuit the next day, thereby terminating the preliminary-injunction proceedings in this Court after only two months.  *See* Dkt.57.

2. Because various other plaintiffs in New York had also challenged the CCIA (including the place-of-worship provision), and because the Second Circuit *sua sponte* had decided to hear appeals from those cases in tandem in March 2023, Plaintiffs promptly filed a motion to expedite the state's appeal and asked the Second Circuit to hear it in tandem alongside the other related cases.  *See* CA2.Dkt.42.  The Second Circuit granted that motion, which ensured that appellate briefing and oral argument would proceed on an unusually accelerated timeline.  *See* CA2.Dkt.47.  The Second Circuit eventually heard several hours of oral argument regarding the CCIA in March 2023, but shortly thereafter, the state complicated matters by amending the place-of-worship provision to prohibit the possession of firearms in a place of worship by anyone "except for those persons responsible for security at such place of worship."  N.Y. Penal Law §265.01-e(c) (effective May 3, 2023).  Invoking that amendment, the state filed a post-argument submission in

the Second Circuit arguing that Plaintiffs' challenge "is now moot," CA2.Dkt.94 at 2, which in turn required Plaintiffs to submit a response pointing out the flaws with the state's argument, *see* CA2.Dkt.96.

Nine months after oral argument, in December 2023, the Second Circuit issued a 261-page decision resolving the four challenges to the CCIA. *See* CA2.Dkt.100. Although the court rejected almost every other argument from every other plaintiff, it agreed with Plaintiffs that it should affirm this Court's preliminary injunction in full. After agreeing with Plaintiffs that the state's statutory amendment to the place-of-worship provision did not moot their challenge (even as it found challenges to the same provision by all other plaintiffs moot), the court also agreed that the provision violates the Free Exercise Clause of the First Amendment. In particular, the court held: "Plaintiffs have sufficiently alleged that the CCIA burdens their sincerely held religious practice"; "the CCIA is, on its face, neither neutral nor generally applicable" because it "applies differently as to places of worship (alongside the other enumerated sensitive places) than to most other privately owned businesses and properties"; the place-of-worship provision fails strict scrutiny; and the remaining preliminary-injunction factors all favored Plaintiffs. CA2.Dkt.100 at 156-71. Because the free-exercise arguments sufficed to affirm the preliminary injunction in full, the court did not reach Plaintiffs' other arguments. *See* CA2.Dkt.100 at 156.

3.    After considering its options, the state elected not to pursue Supreme Court review, so the case returned to this Court.[1] In February 2024, the Court held a status conference "to address

---

[1] One set of plaintiffs—the *Antonyuk* plaintiffs, who had challenged the CCIA solely on Second Amendment grounds and lost in the Second Circuit—did seek Supreme Court review. The Supreme Court ultimately granted their petition, vacated the Second Circuit's judgment, and remanded for further proceedings in light of *United States v. Rahimi*, 602 U.S. 680 (2024). *See Antonyuk v. James*, 144 S.Ct. 2709 (2024). In the wake of that development, the Second Circuit recalled the mandates in all four cases in which it had heard oral argument in March 2023 and

the parties' respective positions as to further proceedings." Dkt.78.  At that conference, the state advised the Court that "the parties are working on a stipulated final order" and that, once that order was granted, Plaintiffs would submit an application to recover attorney's fees and costs, which the state noted it "will oppose." Dkt.78.

After taking most of 2024 to secure approval for a proposed stipulated final order that weighed in at all of two pages, the state eventually filed it in November 2024, and this Court promptly granted it.  *See* Dkt.80, 81.  Among other things, that order permanently enjoins Defendants, "as well as their officers, agents, employees, attorneys, and all persons in active concert or participation with them," from implementing or enforcing the place-of-worship provision against Plaintiffs.  Dkt.81 at 1-2.  The order also states that "that Plaintiffs are a 'prevailing party' under 42 U.S.C. §1988 and therefore are entitled to their reasonable attorneys' fees from" the state, and that "the Court will decide the amount of reasonable attorneys' fees" at a later time.  Dkt.81 at 2.

## ARGUMENT

Section 1988 provides that, "[i]n any action or proceeding to enforce a provision of … [42 U.S.C. §1983] …, the court … may allow the prevailing party … a reasonable attorney's fee as part of their costs." 42 U.S.C. §1988(b).  This Court has already determined that "Plaintiffs are a 'prevailing party'" under §1988.  Dkt.81 at 2.  And the Court has already determined that Plaintiffs not only "may" receive reasonable attorney's fees, but indeed are "entitled to their reasonable

---

ordered all parties to submit supplemental appellate briefing.  *See* CA2.Dkt.115.  Eventually, however, the Second Circuit realized that it had made a mistake in recalling the mandates in the non-*Antonyuk* cases and subsequently reinstated those mandates.  *See* CA2.Dkt.130.  As the Second Circuit's post-remand decision in *Antonyuk* thus confirmed:  "Nothing in this amended opinion in *Antonyuk* should be construed as having any effect on the preliminary injunction issued and upheld in *Spencer*."  *Antonyuk III*, 120 F.4th at 1015 n.75.

attorneys' fees." Dkt.81 at 2.  The only remaining question is what quantum of attorney's fees is "reasonable."   The Second Circuit has explained that the reasonable amount is the product of each attorney's "reasonable hourly rate" multiplied by "the number of hours reasonably expended." *Lilly*, 934 F.3d at 230.  Although Second Circuit precedent requires the Court to consider various factors when conducting the fee analysis, the Court ultimately has "considerable discretion," *Arbor Hill*, 522 F.3d at 190, as "attorney's fees are dependent on the unique facts of each case," *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992).

Here, the Court should exercise its considerable discretion by awarding Plaintiffs $817,636.50 in attorney's fees, plus $7,166.60 in costs.  Those requested attorney's fees reflect the customary hourly rates that Plaintiffs' attorneys actually charged in other matters during the pendency of this litigation and the actual number of hours that Plaintiffs' lawyers expended here. That figure is eminently reasonable given both the extraordinary success that Plaintiffs' attorneys achieved and the special expertise and substantial labor that this case demanded on a compressed schedule.  And the figure is all the more reasonable given New York's persistent refusal to respect its citizens' constitutional rights.   Congress enacted §1988 to deter constitutional violations. Allowing the state to pay bargain prices yet again would only incentivize continued misbehavior.

## I.    Plaintiffs' Requested Attorney's Fees Are Reasonable.

The Second Circuit has explained that district courts should calculate attorney's fees under §1988 pursuant to the "lodestar" method, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  And the Supreme Court has emphasized that the attorney's fees awarded pursuant to §1988 are supposed to provide "assurance" that constitutional violators will not continue in their

ways moving forward. *Carey*, 435 U.S. at 257 n.11. Those considerations amply justify the amount of attorney's fees requested here.

### A.    The Requested Hourly Rates Are Reasonable.

Step one in the analysis is determining the "reasonably hourly rate." The reasonable hourly rate is the rate that a "reasonable, paying client would be willing to pay" and thus is "meant to approximate" the "free market." *Arbor Hill*, 522 F.3d at 184; *see also Missouri v. Jenkins*, 491 U.S. 274, 283 (1989) ("Our cases have repeatedly stressed that attorney's fees awarded under [§1988] are to be based on market rates for the services rendered."). "In determining what rate a paying client would be willing to pay," the Second Circuit has explained that "the district court should consider" "*all*" relevant "case-specific variables," including the so-called "*Johnson* factors"—*i.e.*, the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Lilly*, 934 F.3d at 230. Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717-19). As noted, district courts have "considerable discretion" when weighing these factors. *Id.* at 190. Nevertheless, it is well-recognized that the eighth *Johnson* factor—the results obtained—is "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008). And as the Supreme Court has emphasized, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Those factors and others confirm that the hourly rates requested here are reasonable. Starting with the "most critical factor," *Barfield*, 537 F.3d at 152, there is no question that Plaintiffs "obtained excellent results" in this case, *Hensley*, 461 U.S. at 435.  Plaintiffs filed suit alleging that the CCIA's place-of-worship provision is unconstitutional and sought injunctive relief that would prohibit the state from taking any steps to enforce that provision against them. *See* Dkt.1 at 24-25.  Notwithstanding the state's vigorous opposition in this Court and in the Second Circuit, that is precisely what Plaintiffs achieved.  In December 2022, after determining that the place-of-worship provision likely violates not only the Free Exercise and Establishment Clauses of the First Amendment, but also the Second Amendment, this Court issued an order that preliminarily "enjoined" "Defendants, in their official capacities, as well as their officers, agents, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the Order, … from implementing or enforcing" the place-of-worship provision "against Pastor Spencer, the Church, its members, or their agents and licensees." Dkt.56 at 2, 35.  The Second Circuit subsequently affirmed that preliminary injunction—unanimously—in December 2023 based on the persuasiveness of Plaintiffs' Free Exercise Clause arguments.[2] *See* CA2.Dkt.100 at 156-71.  And in November 2024, this Court made the injunctive relief permanent after the state threw in the towel.  *See* Dkt.81 at 1-2.  In short, given the full relief that Plaintiffs' attorneys secured for their clients, they "should recover a fully compensatory fee." *Abascal v. Fleckenstein*, 2014 WL 7075580, at *1 (W.D.N.Y. Dec. 15, 2014).

Basic opportunity-cost principles demonstrate that fully compensating Plaintiffs' attorneys necessitates the use of their "customary hourly rate[s]," as they could have received compensation

---

[2] As the Supreme Court has explained, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's … failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435.

using those rates from paying clients in other matters if not "preclu[ded]" from working on them "due to acceptance of th[is] case," which involved hundreds of hours of work. *Arbor Hill*, 522 F.3d at 186 n.3; *see Johnson*, 488 F.2d at 718 ("[O]nce the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes."). As the attached declarations confirm, the hourly rates utilized by Plaintiffs' attorneys in this case are the customary hourly rates that they used for other hourly matters during the period that they litigated this case. *See* Exs.A-C. Those rates are as follows[3]:

### Clement & Murphy:  Customary Hourly Rates

|  | **2022** | **2023** | **2024** | **2025** |
|---|---|---|---|---|
| **Erin Murphy** (Partner) | $1,750 | $1,850 | $1,950 | $2,100 |
| **Bartow Farr** (Partner) | $1,650 | N/A | N/A | N/A |
| **Harker Rhodes** (Partner) | N/A | $1,350 | N/A | N/A |
| **Matthew Rowen** (Partner) | $1,200 | N/A | N/A | N/A |
| **Andrew Lawrence** (Partner) | $1,150 | $1,350 | $1,450 | $1,550 |
| **Trevor Ezell*** (Associate) | $1,130 | N/A | N/A | N/A |
| **Joseph DeMott** (Associate) | N/A | $1,100 | N/A | N/A |
| **Nicholas Gallagher*** (Associate) | $900 | $950 | $1,100 | N/A |
| **Chadwick Harper*** (Associate) | $900 | N/A | N/A | N/A |
| **Darina Merriam** (Associate) | $800 | N/A | N/A | N/A |
| **Ilan Posner*** (Associate) | N/A | $750 | N/A | N/A |

---

[3] Several years have passed since this litigation started, so several attorneys are not currently working at these law firms. Those attorneys are (from Clement & Murphy) Trevor Ezell, Nicholas Gallagher, Chadwick Harper, Ilan Posner and (from First Liberty Institute) Jordan Pratt. Their names are denoted with an asterisk in the rate tables.

| | | | | |
|---|---|---|---|---|
| **Kyle Eiswald** (Associate) | N/A | N/A | $850 | $900 |
| **Ashley Britton** (Paralegal) | $460 | $485 | N/A | $525 |
| **Aviana Vergnetti** (Paralegal) | $405 | $425 | N/A | $475 |

### First Liberty Institute:  Customary Hourly Rates

| | **2022** | **2023** | **2024** | **2025** |
|---|---|---|---|---|
| **David Hacker** (Senior Counsel) | $1,400 | N/A | N/A | N/A |
| **Jordan Pratt\*** (Senior Counsel) | $1,200 | N/A | N/A | N/A |
| **Jeremiah Dys** (Senior Counsel) | $1,150 | $1,150 | N/A | N/A |
| **Ryan Gardner** (Counsel) | $850 | $850 | N/A | N/A |
| **Amy Stoermer** (Paralegal) | $75 | N/A | N/A | N/A |

### Ganguly Brothers:  Customary Hourly Rates

| | **2022** | **2023** | **2024** | **2025** |
|---|---|---|---|---|
| **Anjan Ganguly** (Partner) | $395 | N/A | N/A | N/A |

Those customary hourly rates are reasonable for numerous reasons.  At the outset, it bears emphasizing that reasonable clients willingly pay these customary hourly rates—which is why they are customary.  *See* Ex.A ¶38; Ex.B ¶13; Ex.C ¶9.  That is highly significant.  Section 1988 fee awards are ultimately intended to "approximate" the "free market."  *Arbor Hill*, 522 F.3d at 184.  It follows that "the range of rates that plaintiff's counsel actually charge their clients … is obviously strong evidence of what the market will bear."  *Rozell v. Ross-Holst*, 576 F.Supp.2d 527, 44 (S.D.N.Y. 2008); *see also Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly rate customarily charged by counsel or by her law firm.").

Those customary rates are also reasonable because they are consistent with the rates charged by peer firms in the relevant markets. Clement & Murphy is a law firm based in the Washington, D.C. area, and even several years ago, law firms in that market charged "between $1,085-$1,895/hour for law firm partners and between $625-$1,195/hour for associates." Decl. of G. Schaerr at 4, *Franciscan All., Inc. v. Becerra*, No. 16-cv-108 (N.D. Tex. filed Dec. 23, 2022), Dkt.224-2. Clement & Murphy's rates are within those ranges. First Liberty Institute is a law firm in the Dallas-Ft. Worth metropolitan area, and the rates that attorneys can charge in that market are "comparable" to those in Washington, D.C. and other major legal markets. Decl. of B. Robison at 5-6, *Franciscan All.*, No. 16-cv-108 (N.D. Tex. filed Dec. 23, 2022), Dkt.224-3. First Liberty Institute's rates are consistent with those ranges too. Ganguly Brothers is law firm based in this district—in Rochester—and "$400-$500 per hour is generally deemed a reasonable hourly rate for experienced trial counsel" here. *Capax Discovery, Inc. v. AEP RSD Invs., LLC*, 2023 WL 140528, at *6 (W.D.N.Y. Jan. 10, 2023). The hourly rate of Anjan Ganguly, the one Ganguly Brothers attorney who worked on this matter, is below that range.

As the attached declarations attest, *see* Exs.A-C, the customary hourly rates that Plaintiffs' attorneys charge are also eminently reasonable given their "experience, reputation, and ability." *Arbor Hill*, 522 F.3d at 186 n.3. Clement & Murphy is one of just six law firms recognized within "Band 1" of Chambers & Partners' nationwide "Appellate Law" rankings, and Chambers has likewise long recognized the Clement & Murphy attorney who led this case (Erin Murphy) as one of the best appellate advocates in the country. *See Appellate Law | USA*, Chambers & Partners, https://rebrand.ly/5d75fx8 (last visited Feb. 18, 2025). Other organizations have also recognized Clement & Murphy's appellate and constitutional-law prowess, which has enabled its attorneys to prevail in numerous landmark cases, including religious-liberty and Second Amendment cases like

*Bruen*, 597 U.S. 1, *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), and *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020).  *See, e.g.*, Steven Lerner, *Appellate Group of the Year:  Clement & Murphy*, Law360 (Feb. 11, 2025), https://rebrand.ly/cqy6aya; Victoria Ostrander, *Finalists Announced for the National Law Journal Legal Awards 2024*, Nat'l L. J. (Aug. 22, 2024), https://archive.ph/FnT4Q (recognizing Clement & Murphy on "Appellate Hot List"); *see also* Ex.A ¶9.  First Liberty Institute is likewise highly decorated.  It is the Nation's largest law firm dedicated exclusively to defending religious freedom, and it has a success rate above 90% in its legal matters, which include noteworthy cases like *Kennedy*, 597 U.S. 507, *Carson v. Makin*, 596 U.S. 767 (2022), and *American Legion v. American Humanist Association*, 588 U.S. 29 (2019).  *See* Ex.B ¶4.  And Plaintiffs' local counsel, Anjan Ganguly, indisputably qualifies as "experienced trial counsel," *Capax Discovery*, 2023 WL 140528, at *6, as he has served as one of the two principals at his law firm for nearly 15 years and has litigated numerous cases in this district, *see* Ex.C ¶¶3-4.

All signs thus point toward the conclusion that the customary hourly rates that Plaintiffs are asking the Court to apply are reasonable.  If anything, those rates—some of which are now outdated by several years—are unreasonably *low*.  As the Supreme Court has explained, "compensation received several years after the services were rendered … is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed." *Missouri*, 491 U.S. at 283.  To account for this "delay," it is typical to calculate fee awards based on attorney's "current rates" or by "adjusting the fee based on historical rates to reflect its present value." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010).  The fact that Plaintiffs are voluntarily forgoing a larger fee award makes clear that those fees are reasonable.

To be sure, with the exception of Plaintiffs' local counsel, who advised regarding local practice and procedure, Plaintiff's attorneys are out-of-district attorneys, and the Second Circuit has stated that district courts should "presume … that a reasonable, paying client would in most cases hire counsel from within his district." *Arbor Hill*, 522 F.3d at 191.  But it is well-established that "courts need not strictly adhere to the forum rule in all cases."  *Meeks v. City of Rochester*, 2023 WL 3962828, at *3 (W.D.N.Y. June 12, 2023).  And this is the very last case in which strict application of the forum rule makes any sense.

To begin with, this case involved "novel[]" and complex legal issues, *Arbor Hill*, 522 F.3d at 186 n.3, that explored the intersection of the First Amendment's Religion Clauses and the Second Amendment.  Those areas of the law have changed dramatically in recent years—in no small part because of the work of Plaintiffs' attorneys in other cases, which made them uniquely suited to address the issues here.  *See, e.g.*, CA2.Dkt.100 at 39 (observing that *Bruen* established a "new test" for evaluating Second Amendment claims); Stephanie H. Barclay, *The Religion Clauses After* Kennedy v. Bremerton School District, 108 Iowa L. Rev. 2097, 2113 (2023) (stating that *Kennedy* "provide[d] a number of important developments in the [Supreme] Court's jurisprudence under the Establishment Clause and Free Exercise Clause").  Furthermore, everyone—including this Court—understood that this dispute, which involved a newly enacted law and a preliminary injunction, would quickly move out of this district and onto the Second Circuit, if not the Supreme Court, just as occurred in *Roman Catholic Diocese*, *Bruen*, and other recent cases involving New York's recent efforts to restrict the exercise of First and Second Amendment rights.  *See, e.g.*, *Agudath Israel of Am. v. Cuomo*, 141 S.Ct. 889 (2020); *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. 336 (2020); *see also* Dkt.56 at 33-36 (this Court discussing the propriety of a stay pending appeal and providing instruction regarding how

appellate proceedings should unfold). And that is exactly what happened. After a two-month stint in this Court, this case soon shifted to the Second Circuit, where it remained pending for a year. And no substantive proceedings occurred in this Court on remand since the state relented after the Second Circuit's decision affirming the preliminary injunction. This appellate-heavy constitutional-law case thus demanded far more than ordinary civil-litigation experience that an in-district attorney could supply. Plaintiffs correctly recognized at the outset that it is "of such nature as to benefit from special expertise"—namely, expertise in the Religion Clauses of the First Amendment, the Second Amendment, and appellate practice. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009).

Plaintiffs are not aware of attorneys in this district who could have offered the "level of skill required to perform the legal service properly" here. *Arbor Hill*, 522 F.3d at 186 n.3. In fact, attorneys with the requisite skill set are rare even outside this district. There is a relatively small contingent of attorneys capable of successfully litigating high-stakes constitutional-law appeals in the Second Circuit and Supreme Court, and they are overwhelmingly concentrated in Washington, D.C., and therefore charge rates similar to those charged by Clement & Murphy and First Liberty Institute. *See, e.g.*, *Appellate*, Chambers Associates, https://rebrand.ly/2e1hhya (last visited Feb. 18, 2025) (appellate litigation stating that "the critical mass of the practice is in Washington DC"). And Plaintiffs needed appellate litigators who were not only able, but willing, to vindicate their First and Second Amendment rights—a universe that is vanishingly small. Indeed, Plaintiffs' attorneys have firsthand experience with that unfortunate dynamic. Clement & Murphy was founded in 2022—immediately after its founders Paul Clement and Erin Murphy secured a Supreme Court victory in *Bruen*—because their former law firm would not allow them to continue "represent[ing] clients with respect to matters involving the interpretation of the Second

Amendment." Editorial Board, *You Won Your Gun Case. You're Fired.* Wall St. J. (June 23, 2022), https://rebrand.ly/oty9upe; David Lat, *Paul Clement Leaves Kirkland & Ellis Amid A Dispute Over Gun Cases*, Original Jurisdiction (June 24, 2022), https://bit.ly/41wRkHK. Law firms eager to go to bat for plaintiffs in religious-liberty disputes have proven few and far between too, as those disputes are likewise often considered too "controversial." *Franciscan All., Inc. v. Becerra*, 681 F.Supp.3d 631, 644 (N.D. Tex. 2023). This case thus demanded not just "special expertise," but special expertise with arguments that are unfortunately too often deemed "undesirab[le]," *Arbor Hill*, 522 F.3d at 186 n.3, 190, where the lawyer's work is often "not pleasantly received by the community or … contemporaries," *Johnson*, 488 F.2d at 719. As the First Circuit has explained, when "the client needs to go to a different city to find that specialist, he will expect to pay the rate prevailing in that city," and "[i]n such a case, there is no basis for concluding that the specialist's ordinary rate is unreasonably high." *Maceira*, 698 F.2d at 40; *see also Franciscan All.*, 681 F.Supp.3d at 645 ("[T]he Court finds that this was a highly complex case wherein having counsel with specialized expertise in the subject matter was necessary. Therefore, the Court awards fees based on the Washington, D.C. rates."). Just so here.

It is of course possible that attorneys in this district could develop the special expertise necessary to successfully litigate this kind of case if given sufficient time to prepare (and, if they are willing, to brave the opprobrium that often accompanies religious-liberty and Second Amendment work). But Plaintiffs did not have the luxury of waiting for in-district attorneys to cultivate that expertise, as this case involved especially stringent "time limitations." *Arbor Hill*, 522 F.3d at 186 n.3. New York amended its firearms laws to include the place-of-worship provision in July 2022—just days after *Bruen*—and made the provision effective in September 2022. That rapid legislative response meant that Plaintiffs needed attorneys *already* familiar with

the First and Second Amendment that the place-of-worship provision presented who could file a complaint and seek injunctive relief expeditiously. They also needed attorneys who could keep up with the blistering pace that this Court and the Second Circuit established: The parties had to fully brief the preliminary-injunction motion and participate in a hearing in less than two months, and the Second Circuit required the parties to fully brief the appeal and participate in oral argument in less than three months. Given the substantial amount of "labor" and the short amount of "time" to complete it, *Arbor Hill*, 522 F.3d at 186 n.3, Plaintiffs justifiably selected out-of-district specialists. There is no reason to award those out-of-district specialists anything less than their customary hourly rates in these circumstances, *cf. Johnson*, 488 F.2d at 718 ("Priority work that delays the lawyer's other legal work is entitled to some premium."), and any downward departure from those rates would only "tend to prevent those in smaller communities from obtaining the experienced legal counsel they may need, contrary to the policy behind awards of attorneys' fees to prevailing parties," *Maceira*, 698 F.2d at 40.

Plaintiffs' selection of out-of-district attorneys is all the more reasonable given that the other plaintiffs who challenged the CCIA in cases that the Second Circuit considered alongside this one (cases that originated in this District and the Northern District of New York) *also* selected out-of-district attorneys—presumably because they likewise recognized that the special expertise necessary in this context is unavailable in their forums. *See* CA2.Dkt.100 at 4-11 (listing attorneys); *Hardaway v. Nigrelli*, 639 F.Supp.3d 422, 425 (W.D.N.Y. 2022) (same); *Christian v. Nigrelli*, 642 F.Supp.3d 393, 398 (W.D.N.Y. 2022) (same); *Antonyuk v. Hochul*, 639 F.Supp.3d 232, 248 (N.D.N.Y. 2022). Notably, moreover, only Plaintiffs' out-of-district attorneys managed to secure complete relief for their clients in both this Court and the Second Circuit. The Second Circuit has explained that courts may calculate fee awards "based on higher out-of-district rates"

when a "reasonable client would have selected out-of-district counsel because doing so would likely … produce a substantially better net result." *Simmons*, 575 F.3d at 175, 177. That Plaintiffs' attorneys secured a substantially better net result even vis-à-vis other out-of-district attorneys who possess similar expertise leaves no doubt that using customary hourly rates is fully justified here.

The remaining *Johnson* factors reinforce that conclusion. One of those factors is "whether the fee is fixed or contingent," *Arbor Hill*, 522 F.3d at 186 n.3, which is relevant because "higher compensation" is warranted "in contingent fee arrangements" given "the risk of non-payment assumed by the attorney," *Leasing Serv. Corp. v. Dickens*, 1988 WL 151297, at *7 (S.D.N.Y. Oct. 20, 1988). Here, Plaintiffs' out-of-district attorneys agreed to an arrangement in which they could receive attorney's fees only in the event of victory. *See* Ex.A ¶7; Ex.B ¶8. Another factor is "the nature and length of the professional relationship with the client," *Arbor Hill*, 522 F.3d at 186 n.3, as a downward adjustment in an attorney's rate is sometimes appropriate if there are "expectations of future business" and concomitant financial rewards, *Johnson v. AutoZone, Inc.*, 2019 WL 2288111, at *10 (N.D. Cal. May 29, 2019). Plaintiffs had no longstanding relationship with their attorneys, *see* Ex.A ¶7; Ex.B ¶8 n.2, and Plaintiffs hope that they will have no future relationship with their attorneys either, as repeat business would mean that the state is infringing their constitutional rights again. The best way to guard against that risk, and to deter future constitutional violations, is to hold the state accountable by making it pay a full fee award. While New York has managed to avoid paying such awards in the past, other courts have required other governments to pony up—including in cases involving other plaintiffs who prevailed on religious-liberty grounds. *See also, e.g., Franciscan All.*, 681 F.Supp.3d at 646 (requiring federal government to pay over $2.2 million in attorney's fees in religious-liberty dispute); *S. Bay United Pentecostal Church v. Newsom*, 2021 WL 2250818, at *1 (S.D. Cal. June 1, 2021) (requiring

California to pay $1.6 million in attorney's fees in religious-liberty dispute); Final Judgment at 3, *Harvest Rock Church, Inc. v. Newsom*, No. 20-cv-6414 (C.D. Cal. May 14, 2021), Dkt.95 (requiring California to pay $1.35 million in attorney's fees in religious-liberty dispute). That too is a relevant consideration under *Johnson*. *See Arbor Hill*, 522 F.3d at 186 n.3 (referencing "awards in similar cases").

In short, every factor confirms that the Court should require the state to pay attorney's fees calculated at customary hourly rates. Those rates are eminently reasonable given the particular circumstances of this case. And the broader context underscores that customary hourly rates are appropriate, as cut-rate fee awards have failed to deter New York's violations of First and Second Amendment rights in the past.

### B.    The Hours Expended Are Reasonable.

The hours that Plaintiffs' attorneys expended on this matter are also reasonable. "In order to properly assess whether hours were reasonably expended," courts review "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Schneider ex rel. A.T. v. City of Buffalo*, 2021 WL 5042502, at *3 (W.D.N.Y. Oct. 29, 2021). In conducting that review, the pertinent question is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). When attorneys "obtain[]" "strongly favorable results obtained," that "support[s] a finding that the hours billed were reasonable." *28th Highline Assocs.*, 2021 WL 12313375, at *5. And when the results are so favorable that a plaintiff is a prevailing party, and thus is able to submit an application for attorney's fees under §1988, the plaintiff may recover for "time reasonably spent in preparing and defending an application for §1988 fees." *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999).

The contemporaneous billing records submitted here confirm that the hours expended are reasonable. *See* Exs. A-1, B-1, C-2, C-3. Plaintiffs' attorneys billed the vast majority of their hours between October 2022 and May 2023—*i.e.*, when they prepared the complaint, drafted the preliminary-injunction filings, participated in the preliminary-injunction hearing and a related moot court, filed a motion to have the Second Circuit hear the appeal in tandem with the other related appeals, drafted the appellate response brief, participated in the Second Circuit oral argument and related moot court, and drafted the response to the state's suggestion of mootness. Those are all activities that "a reasonable attorney would have engaged in." *Grant*, 973 F.2d at 99. And many of those activities were necessitated by the state's litigating decisions, such as its decision to force Pastor Spencer to provide live testimony at the preliminary-injunction hearing, its decision to appeal this Court's preliminary-injunction order, and its dubious effort to moot this case. The same is true of the remaining activities, which consist of things like reviewing relevant intervening decisions issued by other courts, analyzing the Second Circuit's decision, negotiating the stipulated final order, and preparing this fee application. In all events, if any uncertainty remained about whether "the hours billed were reasonable," the "strongly favorable results obtained" eliminate it. *28th Highline Assocs.*, 2021 WL 12313375, at *5.

Plaintiffs thus are entitled to $817,636.50 in attorney's fees, with $664,477.50 allocated to Clement & Murphy, $144,390.00 allocated to First Liberty Institute, and $8,769.00 allocated to Ganguly Brothers. And to the extent the state opposes this fee application and/or requests a reduced fee award, Plaintiffs will seek reasonable attorney's fees for preparing a reply brief in support of this motion, *see Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017), which (among other things) will reiterate that §1988 "embodies" the "policy concern[]" of "deter[ring] civil rights violations by increasing defendants' liability," *Furtado*, 635 F.2d at 918 n.5.

**II.    Plaintiffs' Requested Costs Are Reasonable.**

Under §1988(b), attorney's fees awards include not only the fees awarded to attorneys, but also "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  Plaintiffs seek reimbursement of $7,166.60 in out-of-pocket costs related to the payment of filing fees, service of process, postage, photocopying, travel, lodging, meals, and parking.   Of those total costs, $1,768.84 come from Clement & Murphy, *see* Ex.A ¶42, $2,988.91 come from First Liberty Institute, *see* Ex.B ¶29, and $2,408.85 come from Ganguly Brothers, *see* Ex.C ¶10.  Because these are "expenses" that "are usually billed in addition to the attorney's hourly rate," *Arbor Hill*, 369 F.3d at 98, there is no question that Plaintiffs may recover them too.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an award of attorney's fees in the amount of $817,636.50, along with another $7,166.60 to reimburse costs.

Dated: February 18, 2025                    Respectfully submitted,


                                            /s/ Anjan K. Ganguly
DAVID J. HACKER                             ANJAN K. GANGULY
JEREMIAH G. DYS*                            GANGULY BROTHERS, PLLC
RYAN GARDNER*                               140 Allens Creek Road
FIRST LIBERTY INSTITUTE                     Suite 220
2001 West Plano Parkway                     Rochester, NY 14618
Suite 1600                                  (585) 232-7747
Plano, TX 75075
(972) 941-4444
                                            ERIN E. MURPHY*
                                            CLEMENT & MURPHY, PLLC
                                            706 Duke Street
*Pro hac vice                               Alexandria, VA 22314
                                            (202) 742-8900

                                            *Counsel for Plaintiffs*