UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HIS TABERNACLE FAMILY CHURCH, INC. and
MICHEAL SPENCER

                      Plaintiffs,

        vs.

STEVEN G. JAMES, Superintendent of the New York
State Police, in his official and individual capacities;
WEEDEN A. WETMORE, District Attorney for the
County of Chemung, New York, in his official and
individual capacities; and MATTHEW VAN HOUTEN,
District Attorney for the County of Tompkins, New
York, in his official and individual capacities.

                      Defendants.

_____

Case No. 6:22-cv-06486

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

LETITIA JAMES
Attorney General of the State of New York
DANIEL R. MAGUIRE
Assistant Attorney General, of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, New York 14202
Tel: (716) 853-8419

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

POINT I     THE HOURLY RATES SOUGHT BY PLAINTIFFS' COUNSEL ARE NOT
            REASONABLE ..................................................................................................... 4

    A.      The hourly rates sought by Plaintiffs' counsel greatly exceed the prevailing
            market rates in the Western District of New York. ................................................. 4

    B.      Plaintiffs' counsel is not entitled to an award of higher out-of-district rates.......... 5

    C.      Plaintiffs' counsel's proposed rates exceed even their home district rates............. 8

            1.    Clement & Murphy ..................................................................................... 8

            2.    First Liberty Institute ............................................................................... 11

POINT II    PLAINTIFFS' REQUESTED FEES MUST BE REDUCED BECAUSE THE
            NUMBER AND NATURE OF HOURS WORKED IS EXCESSIVE AND
            UNREASONABLE ............................................................................................. 12

    A.      Plaintiffs overstaffed this case, and the time spent on certain tasks was excessive
            and redundant. ..................................................................................................... 13

    B.      Plaintiffs' fees must be reduced because of unreasonable block billing and vague
            entries. ................................................................................................................. 16

    C.      First Liberty Institute is not entitled to travel time at its full rates. ...................... 17

POINT III   PLAINTIFFS' ATTORNEYS' FEES GREATLY EXCEED THE AMOUNT A
            REASONABLE CLIENT WOULD HAVE PAID TO PREVAIL IN THIS
            LAWSUIT............................................................................................................ 18

CONCLUSION...................................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

### <u>*Cases*</u>

*ACE Ltd. v. CIGNA Corp.*,
   No. 00 Civ. 9423, 2001 WL 1286247 (S.D.N.Y. Oct. 22, 2021) ............................................. 13

*Alavi v. Bennett*,
   No. 15-2146, 2024 WL 5056204 (D.D.C. Dec. 10, 2024) ........................................................ 8

*Antonyuk v. Chiumento*,
   89 F.4th 271 (2d Cir. 2023) ...................................................................................................... 2

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany & Albany Cnty. Bd. of*
   *Elections*, 522 F.3d 182, 189-90 (2d Cir. 2008) .............................................................. 4, 9, 18

*Barfield v. N.Y.C. Health & Hosps Corp.*,
   537 F.3d 132 (2d Cir. 2008) ...................................................................................................... 3

*Beastie Boys v. Moster Energy Co.*,
   112 F. Supp. 3d 31 (S.D.N.Y. 2015) ....................................................................................... 16

*Bentley Labs. LLC v. TPR Holdings LLC*,
   No. 14 Civ. 6306, 2017 WL 4326536 (S.D.N.Y. Sept. 28, 2017) ........................................... 13

*Bergerson v. N.Y. State Off. Of Mental Health*,
   652 F.3d 277 (2d Cir. 2011) ...................................................................................................... 3

*Brackett v. Mayorkas*,
   No. 17-988, 2023 WL 5094872 (D.D.C. Aug. 9, 2023) ........................................................... 8

*Chamberless v. Masters, Mates & Pilots Pension Plan*,
   885 F.2d 1053 (2d Cir. 1989) .................................................................................................... 9

*Godson v. Eltman, Eltman & Cooper, P.C.*,
   328 F.R.D. 62 (W.D.N.Y. 2018)............................................................................................... 12

*Grant v. Martinez*,
   973 F.2d 96 (2d Cir. 1992) ...................................................................................................... 12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)............................................................................................................. 3, 13

*Houston v. Cotter*,
   234 F.Supp.3d 392 (E.D.N.Y. 2017) ................................................................................. 14, 15

*Hyeon Soon Cho v. Koam Med. Servs. PC*,
   524 F. Supp. 2d 202 (E.D.N.Y. 2007) ...................................................................................... 9

*Kirsch v. Fleet Street, Ltd.*,
   148 F.3d 149 (2d Cir. 1998) .................................................................................................... 16

*Klimbach v. Spherion Corp.*,
   467 F. Supp. 2d 323 (W.D.N.Y. 2006) .................................................................................... 16

*Levitian v. Sun Life & Health Ins. Co.,*
   No. 09 Civ. 2965, 2013 WL 3829623 (S.D.N.Y. July 24, 2013) ............................................ 15

*Lily v. City of New York,*
   934 F.3d 222 (2d Cir. 2019) ................................................................................................ 3

*Luessenhop v. Clinton County,*
   558 F. Supp. 2d 247 (N.D.N.Y. 2008).................................................................................. 15

*Melnick v. Press,*
   No. 06–CV–6686 (JFB) (ARL), 2009 WL 2824586 (E.D.N.Y. Aug. 28, 2009) ..................... 17

*Meriwether v. Coughlin,*
   727 F. Supp. 823 (S.D.N.Y. 1989) ...................................................................................... 17

*Millea, v. Metro-North R. Co.,*
   658 F.3d 154 (2d Cir. 2011) ............................................................................................... 12

*Molefi v. Oppenheimer Trust,*
   No. 03 CIV. 5631 (FB) (VVP), 2007 WL 538547 (E.D.N.Y. Feb. 15, 2007) ........................ 17

*Morris v. Eversley,*
   343 F. Supp. 2d 234 (S.DN.Y. 2004) ................................................................................. 10

*New York State Rifle & Pistol Ass'n, Inv. v. Nigrelli,*
   No. 18-cv-134, 2023 WL 6200195 (N.D.N.Y. Sept. 22, 2023)........................................... 6, 7

*Osterweil v. Bartlett,*
   92 F. Supp. 3d 14 (N.D.N.Y. 2015)............................................................................. 6, 14, 15

*Pastre v. Weber,*
   800 F. Supp. 1120 (S.D.N.Y. 1991) ..................................................................................... 9

*Peterson v. Foote,*
   No. 83-CV-153, 1995 WL 118173 (N.D.N.Y. Mar. 13, 1995) .............................................. 15

*Rodriguez ex rel. Kelly v. McLoughlin,*
   84 F. Supp. 2d 417 (S.D.N.Y. 1999) ................................................................................... 13

*Safranek v. Wormuth,*
   No. 23-cv-5985, 2024 WL 5186599 (S.D.N.Y. Dec. 19, 2024)............................................ 14

*See Katzenberg v. Lazzari,*
   No. 04 CV 5100CBA, 2007 WL 2973586 (E.D.N.Y. 2007).................................................. 17

*Simmonds v. New York City Dep't of Corr.,*
   2008 WL 4303474 (S.D.N.Y. Sept. 16, 2008)...................................................................... 14

*Simmons v. New York City Transit Auth.,*
   575 F.3d 170 (2d Cir. 2009) ................................................................................................. 6

*Terra Energy & Recourses Techs., Inc. v. Terralina Pty. Ltd.,*
   No. 12-cv-1337, 2014 WL 6632937 (S.D.N.Y. Nov. 24, 2014) ............................................ 16

*Themis Cap. v. Democratic Rep. of Congo,*
   No. 09 Civ. 1652, 2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014)............................................ 14

*Trs. of N.Y. Oil Heating Ins. Fund v. Anchor Tank Lines Corp.*,
    No. 09 Civ. 9997, 2011 WL 767162 (S.D.N.Y. Mar. 4, 2011) ................................................ 18

*U.S. v. Acquest Transit, LLC*,
    No. 09-CV-55S, 2016 WL 3536573 (S.D.N.Y. June 29, 2016) ................................................ 13

## ***Statutes***

42 U.S.C. § 1988(b) ................................................................................................................... 3
N.Y. Penal Law § 265.01e(1) ................................................................................................... 2

Defendant Steven G. James,[1] sued in his official and individual capacities as Superintendent of the New York State Police ("Defendant"), respectfully submits this memorandum of law in opposition to Plaintiffs' motion for attorneys' fees and costs (ECF No. 86).

**PRELIMINARY STATEMENT**

Plaintiffs seeks compensation of $817,636.50 for 626.7 hours billed by nineteen attorneys and paralegals on a matter that involved filing a complaint, moving for a preliminary injunction, and defending that preliminary injunction on appeal.  Plaintiffs' attorneys' fees are so high because (1) the "customary" rates charged by plaintiffs' attorneys far exceed (sometimes quadrupling) the customary rates charged by attorneys in the Western District of New York or even in plaintiffs' attorneys home districts and (2) plaintiffs overstaffed the case resulting in excessive work.  The Court should reduce plaintiffs' attorneys' fees to $134,245.80 for three reasons.

First, the hourly rates sought by plaintiffs are not reasonable.  While plaintiffs' attorneys are well-credentialed, only some have demonstrated the necessary experience and specialization to command an out-of-district hourly rate.  Even for those attorneys that can justify an out-of-district hourly rate, their "customary" rates far exceed the customary rate for civil rights litigation in their home districts.  For example, Ms. Murphy's customary rate is $2,100 but the rate for someone with Ms. Murphy's experience in Washington D.C. is only $707.

Second, the hours expended by plaintiffs' counsel litigating this case are not reasonable.  Plaintiffs' counsel spent an excessive amount of time on all aspects of this litigation.  By way of example, plaintiffs' attorneys spent over 80 hours simply preparing for a 2.5 hours preliminary

---

[1] Steven G. James was appointed Superintendent of New York State Police on April 4, 2024.  Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted as a party for Superintendent Bruen.

injunction hearing.  This excessive amount of time warrants a 40% reduction in plaintiffs' fees.
Moreover, plaintiffs' bills are filled with vague time entries and block-billing warranting another
10% reduction.

Third, plaintiffs' fees far exceed what a reasonable legal services consumer would pay to
obtain the same results obtained by plaintiffs' counsel and far exceed what a comparable law
firm would charge such work.  In *Hardaway, Jr. v. Nigrelli*, (W.D.N.Y. No. 22-cv-00771-JLS), a
case that challenged the same Place of Worship Provision at issue in this case and obtained
nearly an identical result, the plaintiffs' attorneys settled their fee application for $150,000.00.
This is a touchstone for what reasonable attorneys' fees are in this case.

### FACTUAL BACKGROUND

On July 1, 2022, the New York Legislature passed the Concealed Carry Improvement
Act ("CCIA").  The CCIA enumerated a set of "sensitive locations" in which individuals may
not possess "a firearm, rifle or shotgun."  Penal Law § 265.01e(1).  As relevant here, the list
includes "any place of worship or religious observation" (the "Place of Worship Provision").  *Id.*
§ 265.01e(2)(c).

On November 3, 2022, plaintiffs, a church located in Horseheads, New York and its
senior pastor, commenced this action seeking a declaration that the Place of Worship Provision
violated the First and Second Amendment.  ECF No. 1.  Shortly thereafter, plaintiffs moved for a
preliminary injunction enjoining the defendants from enforcing the Place of Worship Provision.
ECF No. 9.  The Court granted plaintiffs' preliminary injunction motion.  ECF No. 56.
Defendant appealed.  ECF No. 57.

The Second Circuit heard Defendant's appeal in tandem with three other cases
challenging various provisions of New York's laws regulating the public carriage of firearms.
*See Antonyuk v. Chiumento*, 89 F.4th 271, 288 (2d Cir. 2023).  In December 2023, the Second

Circuit issued a decision resolving the four challenges to the CCIA.  As relevant here, the Second

Circuit affirmed this Court's preliminary injunction enjoining enforcement of the Place of

Worship Provision as against "Pastor Spencer, the Tabernacle Family Church, its members, or

their agents and licensees."  *Antonyuk*, 89 F. 4th at 352.

On November 1, 2024, the parties filed a proposed stipulated order permanently

enjoining defendants from enforcing the Place of Worship Provision as against "Pastor Spencer,

the Tabernacle Family Church, its members, or their agents and licensees" and declaring

plaintiffs a prevailing party under 42 U.S.C. § 1988.  ECF No. 80.  The Court entered the order

on November 4, 2024.

## ARGUMENT

To "ensure effective access to the judicial process for persons with civil rights

grievances," *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), Section 1988(b) empowers the

Court to award reasonable attorney fees to the "prevailing party" in a Section 1983 action.  42

U.S.C. § 1988(b).  District courts have "considerable discretion in determining what constitutes

reasonable attorneys' fees in a given case." *Barfield v. N.Y.C. Health & Hosps Corp.*, 537 F.3d

132, 151 (2d Cir. 2008).  "The reasonable hourly rate should be what a reasonably, paying client

would be willing to pay, given that such a party wishes to spend the minimum necessary to

litigate the case effectively." *Bergerson v. N.Y. State Off. Of Mental Health*, 652 F.3d 277, 289-

90 (2d Cir. 2011).  Courts in the Second Circuit generally use the lodestar, or "presumptively

reasonable fee," approach to calculate reasonable attorneys' fees. *Lily v. City of New York*, 934

F.3d 222, 228 (2d Cir. 2019).  This approach requires a district court to set a "reasonable hourly

rate, taking account of all case-specific variables," and determine "the appropriate billable hours

expended." *Id.* at 230.  "[T]he district court…bears the burden of disciplining the market,

stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount

necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189-90 (2d Cir. 2008).

Plaintiffs seek over $800,000.00 in attorneys' fees for drafting a complaint, briefing a preliminary injunction motion, participating in a half-day preliminary injunction hearing, and defending this Court's preliminary injunction on appeal. This astronomical amount is not reasonable—it is derived from unreasonable hourly rates and excessive billable hours. The Court should award plaintiffs a dramatically lower amount.

## POINT I

### THE HOURLY RATES SOUGHT BY PLAINTIFFS' COUNSEL ARE NOT REASONABLE

**A.    The hourly rates sought by Plaintiffs' counsel greatly exceed the prevailing market rates in the Western District of New York.[2]**

District courts should generally use the "prevailing market rates in the relevant community" in determining the reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Second Circuit has interpreted the "community" to mean "the district where the district court sits." *Arbor Hill*, 522 F.3d at 190. A review of cases in the Western District indicates that the following hourly rates (or rate ranges) are reasonable: $300-$560 for partners; $200-$285 for associates; and $110-$210 for paralegals. A chart summarizing the rates awarded in recent cases is below:

| Case Name | Partner | Associate | Paralegal |
|---|---|---|---|
| *Howard v. City of Rochester*, No. 23-cv-6565, 2025 WL 1248365 (W.D.N.Y. Apr. 30, 2025) | $475 | N/A | N/A |
| *Ryan v. Town of Tonawanda*, No. 23-cv-351, 2025 WL 997362 (W.D.N.Y. Apr. 1, 2025) | $350 | N/A | $110 |
| *Ortiz v. Stambach*, 657 F. Supp. 3d 243, 268 (W.D.N.Y. 2023) | $300 | $200 | $100 |

---

[2] Defendant does not object to Anjan Ganguly's hourly rate of $395/hr.

4

| | | | |
|---|---|---|---|
| *New York v. Grand River Enterprises Six Nations, Ltd.*, No. 14-CV-910A(F), 2021 WL 4958653 (W.D.N.Y. Oct. 26, 2021) | $500 | $200 | N/A |
| *Board of Trustees of Bricklayers and Allied Craftworkers Local 3 v. Upstate Specialty Coatings, LLC*, No. 23-CV-06250, 2024 WL 376652 (W.D.N.Y. Feb. 1, 2024) | $390 | $285 | $210 |
| *Xerox Corp. v. Conduit Global, Inc.*, No. 21-cv-6467, 2024 WL 3548411 (W.D.N.Y. July 26, 2024) | $560 | $285 | $140 |

Here, plaintiffs seek hourly rates significantly greater than reasonable in-district rates, ranging from $1,150 to $2,100 for partners, $800 to $1,130 for associates, and $405 to $525 for paralegals. To be sure, many of plaintiffs' attorneys have significant experience in constitutional litigation and are exceedingly well-credentialed. But this experience does not entitle plaintiffs' counsel to attorney hourly rates quadruple the reasonable in-district rates or ***paralegal*** hourly rates that approach the highest ***attorney*** hourly rates ever approved in the Western District. In recognition of many of plaintiffs' counsels experience and credentials, Defendant does not object to reasonable hourly rates at the upper range of the Western District's in-district rates (*i.e.* $560/hr for experienced partners, $350/hr for less experienced partners, $285/hr for senior associates, $200/hr for junior associates, and $140/hr for paralegals).

## B. Plaintiffs' counsel is not entitled to an award of higher out-of-district rates.

Recognizing that plaintiffs' counsel's rates greatly exceed the reasonable in-district rates for the Western District, plaintiffs argue that they should be awarded higher out-of-district rates. Memorandum in Support of Plaintiffs' Motion for Attorney's Fees and Costs ("Pl. Mem.) (ECF No. 86-1), 18. Not so.

"[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." *Simmons v. New York*

*City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009). To "overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* The party "seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id.* at 176. "Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise" or by showing that "local counsel possessing requisite experience were unwilling or unable to take the case…[or] no in-district counsel possessed such expertise." *Id.* at 175-76. "A litigant cannot overcome the presumption in favor of in-district rates 'by relying on the prestige or "brand name" of her selected counsel.'" *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 26 (N.D.N.Y. 2015).

In *New York State Rifle & Pistol Ass'n, Inv. v. Nigrelli*, No. 18-cv-134, 2023 WL 6200195 (N.D.N.Y. Sept. 22, 2023) ("*NYSRPA*"), the Northern District considered whether the firms that litigated *Bruen* (including the lower court litigation) were entitled to out-of-district rates for their work. There, the Northern District held that counsel that worked on the lower court litigation before the Northern District and Second Circuit were not entitled to out-of-district rates because plaintiffs had not shown that "out-of-district counsel 'would likely (not just possibly) produce a substantially better net result' at the district- and circuit-court levels." *Id.* (quoting *Simmons*, 575 F. 3d at 175). The Northern District reasoned that the result at the district- and circuit-court levels was effectively predetermined by then existing precedent. *Id.*

Accordingly, who plaintiffs retained to litigate at the district- and circuit-court levels had no impact on the result. *Id.*

The same is true here. By the time plaintiffs commenced this action and filed their preliminary injunction motion, this Court had already found the Places of Worship Provision unconstitutional and issued an injunction prohibiting its enforcement in *Hardaway, Jr. v. Nigrelli*, (W.D.N.Y. No. 22-cv-00771-JLS), ECF No. 52 (the "*Hardaway* Injunction"). Given the *Hardaway* Injunction, the result here at the district court level was a *fait accompli*, and certainly did not require the retention of large numbers of expensive attorneys. Regardless of who plaintiffs engaged as counsel, this Court was almost certainly going to issue an injunction prohibiting the enforcement of the Places of Worship Provision. Plaintiffs should not be entitled to out-of-district rates to obtain an effectively predetermined result. Accordingly, plaintiffs should not be entitled to out-of-district rates for their time spent litigating before this Court.

Recognizing that (1) this action involved complex First and Second Amendment issues and (2) some of plaintiffs' counsel has extensive experience in these areas, Defendant does not object to the Court using out-of-district rates for the appellate work of some of plaintiffs' attorneys. Specifically, the Defendant does not object to out-of-district rates for Erin Murphy, Andrew Lawrence, and Nicholas Gallagher. For plaintiffs' remaining counsel, however, plaintiffs have not demonstrated that those individuals "possessed special expertise demonstrated by experience-based, objective factors that made their services subject of rates substantially higher than in-district rates." *NYSRPA*, 2023 WL 6200195, at 5. In *NYSRPA*, the Northern District examined the specific experience of each attorney that worked on the matter to determine whether that specific attorney's experience justified out-of-district rates. The Court

should engage in the same analysis here to conclude that only Erin Murphy, Andrew Lawrence, and Nicholas Gallagher are entitled to out-of-district rates for their work on the appeal.

**C.    Plaintiffs' counsel's proposed rates exceed even their home district rates.**

Even if the Court concludes that plaintiffs' counsel is entitled to out-of-district rates, the rates sought by plaintiffs far exceed the rates for complex litigation in their home districts.

**1.    Clement & Murphy**

First, in *NYSRPA*, the Northern District determined the reasonable rates for some of the same attorneys that worked on this matter.  Specifically, the Northern District determined the reasonable rates for Erin Murphy ($531.90/hr), Nicholas Gallagher[3] ($190/hr),[4] and Mariel Brookins ($200/hr).  The rates sought by plaintiff in this litigation far exceed these "reasonable rates" from *NYSRPA*.

Second, Clement & Murphy is based in Washington D.C.  Pl. Mem., 16.  In the District Court for the District of Columbia, courts have used the Fitzpatrick Matrix to determine reasonable rates for complex federal litigation.  *See Alavi v. Bennett*, No. 15-2146, 2024 WL 5056204, at * 13 (D.D.C. Dec. 10, 2024) ("the Fitzpatrick Matrix is a superior reflection of reasonable rates."); *see also Brackett v. Mayorkas*, No. 17-988, 2023 WL 5094872, at *4 (D.D.C. Aug. 9, 2023) (collecting cases).  Here, as shown in the chart below, Clement & Murphy's proposed rates greatly exceed the rates in the Fitzpatrick Matrix.

---

[3] In *NYSRPA*, the Northern District held that Nicholas Gallagher did not command out-of-district rates due to his lack of experience.  As noted above, Defendant recognizes that since *NYSRPA*, Mr. Gallagher has developed sufficient experience in First and Second Amendment litigation that applying out-of-district rates is appropriate.

[4] The Northern District also determined reasonable out-of-district rates for H. Bartow Farr ($533.04/hr), Harker Rhodes ($408.25/hr), and Matthew Rowen ($390.42/hr).  The Northern District awarded these individuals out-of-district rates based on their Supreme Court litigation experience and the relevance of such experience given that *NYSRPA* was heard by the Supreme Court.  Because this case was not litigated at the Supreme Court, these individuals should not be entitled to out-of-district rates in this case.

Third, Clement & Murphy's exceptionally high rates are derived from the high profile corporate appellate work it performs for large corporations.[5]  *See* Clement & Murphy, *https://www.clementmurphy.com/what-we-do/appeals/* (last visited June 9, 2025).  This, however, is not the relevant legal market for determining the reasonable hourly rate in this case. As the Second Circuit has noted, "legal markets may be defined by practice area."  *Arbor Hill*, 493 F.3d at 120.  Thus, counsel is only entitled to fees that are "in line with those prevailing in the community *for similar services by lawyers of reasonably comparable skill, experience and reputation*."  *Chamberless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058-59 (2d Cir. 1989) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)) (emphasis in original).  In civil rights cases, it is not unusual for private counsel to be retained to assist with litigation that is outside the scope of its customary practice.  In such cases, the private firm is not entitled to its usual rates.  Rather, the reasonable rate to be awarded should be consistent with those awarded to attorneys who practice in the area of civil rights.  As the court in *Pastre v. Weber*, 800 F. Supp. 1120, 1125 (S.D.N.Y. 1991) noted:

> there is force in defendant's argument that he should not be required to pay for legal services at the rate Hughes Hubbard would charge to, say, General Motors or IBM (should they be among its clients), but should be required to compensate plaintiff only for what would have been charged by a competent attorney specializing in civil rights litigation., We therefore shall be guided in calculating the lodestar by, among other things, what we believe would be required to retain a competent civil rights attorney.

*See also Hyeon Soon Cho v. Koam Med. Servs. PC,* 524 F. Supp. 2d 202 (E.D.N.Y. 2007)("The Court finds the rates claimed for the services provided by [Dewey and LeBeouf] to be excessive in light of the type of litigation involved. While these rates may be on par for the protracted and complex corporate litigation that D&L is accustomed to handling for large, fee-paying clients,

---

[5] While Clement & Murphy have worked on First and Second Amendment litigations in the past, Plaintiffs have provided no evidence that Clement & Murphy charges these high rates to clients in those litigations.

these amounts greatly exceed the rates usually charged by wage-and-hour attorneys."); *Morris v. Eversley,* 343 F. Supp. 2d 234, 247 (S.DN.Y. 2004) ("it would not be fair to [defendant in a pro bono case] to assess fees against him based on the same rates Milbank charges its large corporate clients for very different legal work").  Because plaintiffs have provided no evidence that Clement & Murphy's First and Second Amendment litigation clients are willing to pay such high hourly rates, the Court should not accept Clement & Murphy's customary rates as reasonable.

Below is a chart summarizing the information above and detailing the Defendant's proposed reasonable rates for each of the attorneys/paralegals that worked on this matter:

| | Rates Sought (blended rate) | Fitzpatrick Matrix (2023) | *NYSRPA* Rates | WDNY Customary Rates | Defendant's Proposed Rates |
|---|---|---|---|---|---|
| **Erin Murphy** | $1,912.50 | $707 (17 yrs) | $531.90 | $560 | $560 District Court work/$707 appellate work) |
| **Bartow Farr** | $1,650 | $807 (35+ yrs) | N/A | $560 | $560 |
| **Harker Rhodes** | $1,350 | $638 (11 yrs) | N/A | $350 | $350 |
| **Matthew Rowen** | $1,200 | $625 (10 yrs) | N/A | $350 | $350 |
| **Andrew Lawrence** | $1,375 | $598 (8 yrs) | N/A | $285 | $258 District Court work/$598 appellate work |
| **Trevor Ezell** | $1,130 | $568 (6 yrs) | N/A | $285 | $285 |
| **Mariel Brookins** | $1,200 | $568 (6 yrs) | $200 | $285 | $285 |
| **Joseph DeMott** | $1,100 | $553 (5 yrs) | N/A | $285 | $285 |
| **Nicholas Gallagher** | $983.33 | $536 (4 yrs) | $190 | $200 | $200 District Court work/$536 appellate work |
| **Chadwick Harper** | $900 | $536 (4 yrs) | N/A | $200 | $200 |
| **Darina Merriam** | $800 | $520 (3 yrs) | N/A | $200 | $200 |

| Ilan Posner | $750 | $485 (1 yr) | N/A | $200 | $200 |
|---|---|---|---|---|---|
| Kyle Eiswald | $875 | $467 (0 yr) | N/A | $200 | $200 |
| Ashley Britton | $483.33 | $220 | $90 | $140 | $140 |
| Aviana Vergnetti | $435 | $220 | N/A | $140 | $140 |

### 2.    First Liberty Institute

First Liberty Institute acknowledges that the majority of the work it performed in this litigation occurred during the district court proceedings.  ECF No. 86-3, ¶ 12.  As explained above, because the result of the district court proceedings was effectively predetermined by the *Hardaway* Injunction, First Liberty Institute should only be entitled to in-district rates for that work.

As for the limited work that First Liberty Institute performed on the appellate proceedings, First Liberty Institute should not be entitled to its "customary" rates which exceed the rates in First Liberty Institute's home district of the Northern District of Texas.  Plaintiffs claim that rates in the Northern District of Texas are "comparable to those in Washington D.C. and other major legal markets."  ECF No. 86-1.  Therefore, the Fitzpatrick Matrix can be used to determine reasonable rates for complex litigation in the Northern District of Texas.  As illustrated below, the rates from the Fitzpatrick Matrix are dramatically less than First Liberty Institute's "customary" rates.

Below is a chart summarizing this information and Defendant's proposed reasonable rates for the work performed by First Liberty Institute.

| | Rates Sought (blended rate) | Fitzpatrick Matrix (2022) | WDNY Customary Rates | Defendant's Proposed Rates |
|---|---|---|---|---|
| **David Hacker** | $1,400 | $675 (18 yrs) | $560 | $560 (District Court work)/$675 (appellate work) |
| **Jordan Pratt** | $1,200 | $589 (10 yrs) | $560 | $350 (District Court work)/$589 (appellate work) |
| **Jeremiah Dys** | $1,150 | $666 (17 yrs) | $560 | $350 (District Court work)/$666 (appellate work) |
| **Ryan Gardner** | $850 | $535 (6 yrs) | $285 | $285 (District Court work)/$535 (appellate work) |

## POINT II

### PLAINTIFFS' REQUESTED FEES MUST BE REDUCED BECAUSE THE NUMBER AND NATURE OF HOURS WORKED IS EXCESSIVE AND UNREASONABLE[6]

After determining the reasonable hourly rate, the Court must determine the "reasonable number of hours required by the case." *Millea*, *v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). "[A]ny attorney…who applies for court-ordered compensation in this Circuit…must document the application with contemporaneous time records. *Godson v. Eltman, Eltman & Cooper, P.C.*, 328 F.R.D. 62, 63 (W.D.N.Y. 2018). "To determine the reasonableness of the hours spent on litigation, the court must make a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Id.* "The relevant issue, however, is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). "If a court finds that the fee applicant's claim is excessive or that time spent was wasteful or

---

[6] Defendant largely does not object to the hours spent by Anjan Ganguly in this litigation. Defendant, however, objects to Mr. Ganguly billing his travel time at his full customary rate. The Court should reduce Mr. Ganguly's attorney's fees for travel time by 50%.

duplicative, it may decrease or disallow certain hours or, where the application for fee is voluminous, order an across-the-board percentage reduction in compensable hours." *Bentley Labs. LLC v. TPR Holdings LLC*, No. 14 Civ. 6306, 2017 WL 4326536, at *2 (S.D.N.Y. Sept. 28, 2017).  "Upon finding that counsel seeks compensation for excessive hours, 'the court has discretion to simply deduct a reasonable percentage of the number of hours claim as a practical means of trimming fat from a fee application.'"  *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999) (citations omitted).

A.    **Plaintiffs overstaffed this case, and the time spent on certain tasks was excessive and redundant.**

In deciding whether hours expended were reasonable, a court should exclude those documented hours which are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  In connection with this litigation, Plaintiffs mobilized a team of eight partners, five senior associates, five junior associates, and three paralegals.  This team of eighteen attorneys deployed to prepare a complaint, draft a preliminary injunction motion, conduct a half-day preliminary injunction hearing, and defend an appeal of the preliminary injunction order.  There was no need for such a large team, and the size of the team undoubtedly led to duplication, redundancy, and inefficiencies.  *See U.S. v. Acquest Transit, LLC*, No. 09-CV-55S, 2016 WL 3536573, at *2 (S.D.N.Y. June 29, 2016) (reducing attorneys' fees award by 50% where plaintiff "significantly overstaffed Plaintiff's prosecution of the enforcement proceedings"); *ACE Ltd. v. CIGNA Corp.*, No. 00 Civ. 9423, 2001 WL 1286247, at *6-7 (S.D.N.Y. Oct. 22, 2021) (overstaffing and duplication of effort caused by six partners, three associates, and fourteen paraprofessionals warranted a 50% across-the-board reduction in fees); *see also Houston v. Cotter*, 234 F.Supp.3d 392, 410 (E.D.N.Y. 2017) (reducing a fee award by 50% as a result of over-staffing ten different attorneys on a matter, duplicating efforts,

and block-billing); *Simmonds v. New York City Dep't of Corr.*, 2008 WL 4303474, at *7-8 (S.D.N.Y. Sept. 16, 2008) (reducing hours by 40% as a result of inefficiencies resulting from overstaffing in a co-counsel arrangement).  Fees will be reduced as a result of "the sheer number of attorney timekeepers who billed time on the case." *Themis Cap. v. Democratic Rep. of Congo*, No. 09 Civ. 1652, 2014 WL 4379100, at *5 (S.D.N.Y. Sept. 4, 2014).

Redundancies here are not merely theoretical or presumed.  Plaintiffs submitted time entries show clear and unreasonable duplication of efforts across its various attorneys and paraprofessionals.  By way of example, from October 21 – November 3, 2022, three partners and four associates billed over 45 hours to drafting and revising the complaint.  *See Safranek v. Wormuth*, No. 23-cv-5985, 2024 WL 5186599, at *6 (S.D.N.Y. Dec. 19, 2024) (concluding that 80 hours spent drafting a 23-page complaint excessive and concluding complaint should not have required more than 25 hours to draft).  Over a similar period, three partners and three associates billed over 80 hours drafting and revising the preliminary injunction motion.  Equally excessive was the staffing of the half-day preliminary injunction hearing.  Plaintiffs spent an excessive amount of time preparing for the half-day hearing.  This included seven Clement & Murphy attorneys spending over 80 hours preparing for the oral argument and participating in a moot court from December 14, 2022 – December 21, 2022.  *See Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 35 (N.D.N.Y. 2015) (finding that the 63 hours Ms. Murphy and her colleagues while at a previous firm spent preparing for and arguing at the Second Circuit to be excessive).  Plaintiffs then had five attorneys attend the preliminary injunction hearing only two of which participated in the hearing.  *See* ECF No. 62.

These redundancies continued during the appeal.  For example, between February 3 – February 28, 2023, Plaintiffs spent over 100 hours drafting and revising their response brief.

Reasonably experienced appellate attorneys (like Plaintiffs' attorneys) should not need so much time to prepare an appellate brief, particularly where the record on appeal is small. *See Osterweil*, 92 F. Supp. 3d at 33 (concluding that 80.35 hours for preparation and editing of the brief was excessive and awarding 56.45 total hours for preparation of brief); *see also Peterson v. Foote*, No. 83-CV-153, 1995 WL 118173, *4 (N.D.N.Y. Mar. 13, 1995) (concluding that 98.45 hours spent researching and drafting an appellate brief was unreasonable and reducing the hours to 65.60).  As with preparing for oral argument before this Court, Plaintiffs also spent an excessive amount of time preparing for oral argument before the Second Circuit.  Plaintiffs spent over 100 hours between March 3, 2023 and March 20, 2023 preparing for the Second Circuit argument. *See Osterweil*, 92 F. Supp. 3d at 35 (finding 63 hours preparing and arguing before the Second Circuit excessive); *Luessenhop v. Clinton County*, 558 F. Supp. 2d 247, 270 (N.D.N.Y. 2008) (finding 28 hours spent in preparation for oral argument before the Second Circuit to be excessive); *Levitian v. Sun Life & Health Ins. Co.,* No. 09 Civ. 2965, 2013 WL 3829623, *10 (S.D.N.Y. July 24, 2013) (finding 54 hours collectively billed for preparation and attendance at oral argument before the Second Circuit excessive).

Given the excessive amount of time that Plaintiffs spent litigating this case, an across-the-board reduction of 30% is warranted on Clement & Murphy and First Liberty Institute's attorneys' fees. *See Houston v. Cotter*, 234 F. Supp. 3d 392, 410 (E.D.N.Y. 2017) ("In light of these problems with Cleary Gottlieb's billing records, the overstaffing of this case, and the Court's experience with this and other Section 1983 actions, the Court concludes that a 50 percent across-the-board reduction in counsel's hours is warranted").

**B.    Plaintiffs' fees must be reduced because of unreasonable block billing and vague entries.**

A further reduction of hours is appropriate based on block-billing and vague time entries. "The use of the block-billing format in billing records has prompted some courts in New York to reduce the amount of attorneys' fees requested…because of the obfuscating effect that block billing has on a court's ability to ascertain precisely how" counsel used his or her time. *Terra Energy & Recourses Techs., Inc. v. Terralina Pty. Ltd.*, No. 12-cv-1337, 2014 WL 6632937, at * 5 (S.D.N.Y. Nov. 24, 2014). Block billing is "most problematic where large amounts of time…are block billed." *Beastie Boys v. Moster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015). Similarly, courts have reduced attorney hours for vague billing records. *See e.g. Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172-72 (2d Cir. 1998) (affirming the district court's finding that billing entries merely indicating "work on motion" "are too vague to sufficiently document the hours claimed); *Klimbach v. Spherion Corp.*, 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006) (finding that entries for "work on summary judgment," absent further explanation, were unacceptably vague). Clement & Murphy often engaged in block-billing and used vague time entries to document large amounts of time. Below is a chart containing just a sample of block-billed and vague entries:

| Date | Description | Attorney Name | Time | Amount Owed |
|------|-------------|---------------|------|-------------|
| 10/31/22 | Review and analyze draft complaint; prepare for and participate in telephone conference with co-counsel re. same | Andrew Lawrence | 1.0 | $1,150.00 |
| 11/01/22 | Revise draft complaint; exchange emails re. local counsel | Erin Murphy | 2.5 | $4,375.00 |
| 11/4/22 | Research and revise draft preliminary injunction brief | Trevor Ezell | 10.75 | $12,147.50 |
| 11/14/22 | Prepare for initial case conference | Trevor Ezell | 2.0 | $2,260.00 |

| 12/12/22 | Draft PI reply | Trevor Ezell | 5.25 | $5,932.50 |
|----------|---------------|--------------|------|-----------|
| 12/16/22 | Prepare for moot. | Chadwick Harper | 3.5 | $3,150.00 |
| 2/11/23 | Draft response brief | Andrew Lawrence | 7.5 | $10,125.00 |
| 2/13/23 | Draft brief; telephone conference with C&M and FLI teams re response brief | Andrew Lawrence | 8.5 | $11, 475.00 |

First Liberty Institute similarly frequently used vague time entries. *See* 10-23-22 ("draft PI motion"); 10-24-22 ("draft PI motion").

Based on these vague and block-entries, the Court should further reduce the billed hours of Clement & Murphy and First Liberty Institute by 10%. *See Katzenberg v. Lazzari*, No. 04 CV 5100CBA, 2007 WL 2973586, at *10 (E.D.N.Y. 2007) (reducing vague entries by 50%); *Meriwether v. Coughlin*, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (15% reduction to account for vague billing entries); *Molefi v. Oppenheimer Trust*, No. 03 CIV. 5631 (FB) (VVP), 2007 WL 538547, at *7–8 (E.D.N.Y. Feb. 15, 2007) (applying 15 % reduction for, *inter alia*, a "substantial amount" of block-billing); *Melnick v. Press*, No. 06–CV–6686 (JFB) (ARL), 2009 WL 2824586, at *6 (E.D.N.Y. Aug. 28, 2009) (applying 10 percent reduction based on counsel's "repeated use of block-billing such that the reasonableness of each entry could not be as easily determined").

## C.    **First Liberty Institute is not entitled to travel time at its full rates.**

Plaintiffs seek attorneys' fees of $56,600 for First Liberty Institute's travel to the preliminary injunction hearing, a moot court in Washington D.C., and oral argument at the Second Circuit. The First Liberty attorneys billed at their customary rate for this travel time. While attorneys' reasonable travel time is frequently recoverable in an application for fees, "[c]ourts in this circuit regularly reduce attorney's fees by 50% for travel time." *Trs. of N.Y. Oil Heating Ins. Fund v. Anchor Tank Lines Corp.*, No. 09 Civ. 9997, 2011 WL 767162, at *5

(S.D.N.Y. Mar. 4, 2011) (citing *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 373 (S.D.N.Y. 2005)). Accordingly, First Liberty attorneys' fees for travel time should be reduced by 50%. This reduction should occur after the Court reduces First Liberty Institute's customary hourly rate to a reasonable amount.

### POINT III

**PLAINTIFFS' ATTORNEYS' FEES GREATLY EXCEED THE AMOUNT A REASONABLE CLIENT WOULD HAVE PAID TO PREVAIL IN THIS LAWSUIT**

In determining reasonable attorneys' fees, the courts steps "into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n,* 522 F.3d at 189-90. Unlike most cases, where determining how much a hypothetical firm would charge a client to obtain the same result is far too speculative, here, there is indisputable evidence that a highly qualified firm would be willing to perform nearly identical work for a nearly identical result for only $150,000—approximately $650,000 less than the amount sought by plaintiffs.

*Hardaway* is nearly identical to this case in all material respects. The *Hardaway* plaintiffs (1) sought the same relief as that sought here (an injunction prohibiting enforcement of the Places of Worship Provision); (2) pursued the same litigation strategy as here and engaged in the same litigation conduct (filed a complaint, filed a motion for a preliminary injunction, and defended the order granting the preliminary injunction on appeal); and (3), like here, were the prevailing party entitled to attorneys' fees. Furthermore, like plaintiffs in this case, the *Hardaway* plaintiffs engaged experienced counsel in Cooper & Kirk, who litigated *Bruen* with Ms. Murphy, and Phillips Lytle LLP. Despite these similarities, the *Hardaway* plaintiffs were willing to accept $150,000 in attorneys' fees as the prevailing party. *See Hardaway, Jr. v. Nigrelli*, (W.D.N.Y. No. 22-cv-00771-JLS), ECF No. 88. This is a strong barometer of what a

"reasonable paying client, who wishes to pay the least amount necessary to litigate the case effectively" would pay to litigate this case.  While Defendant recognizes that there are distinctions between *Hardaway* and this case—for example, *Hardaway* did not include a First Amendment claim—these distinctions do not warrant a $650,000 disparity in attorneys' fees, particularly when the *Hardaway* case was argued and decided first.

Using *Hardaway* as a touchstone and applying the lodestar approach (with the appropriate reductions outlined above), the Court should award plaintiffs $134,245.80 in attorneys' fees,[7] itemized as follows:

**Table 1: Clement & Murphy, PLLC[8]**

| Attorney/Paraprofessional | Defendant's Adjusted Rates | Defendant's Total Fees |
|---|---|---|
| Erin Murphy | $560 District Court work/$707 appellate work) | $59,802.75 |
| Bartow Farr | $560 | $8,540.00 |
| Harker Rhodes | $350 | $6,212.50 |
| Matthew Rowen | $350 | $1,750.00 |
| Andrew Lawrence | $258 District Court work/$598 appellate work | $65,107.50 |
| Trevor Ezell | $285 | $29,996.25 |
| Mariel Brookins | $285 | $4,275.00 |
| Joseph DeMott | $285 | $1,638.75 |
| Nicholas Gallagher | $200 District Court work/$536 appellate work | $17,486.00 |
| Chadwick Harper | $200 | $2,050.00 |
| Darina Merriam | $200 | $1,400.00 |
| Ilan Posner | $200 | $3,000.00 |
| Kyle Eiswald | $200 | $4,250.00 |
| Ashley Britton | $140 | $1,190.00 |
| Aviana Vergnetti | $140 | $3,045.00 |
| **Firm Subtotal** | — | $209,743.575 |

---

[7] Defendant does not object to the $7,166.60 sought by plaintiffs in costs.

[8] An annotated spreadsheet of Clement & Murphy's billing entries that includes Defendant's rate calculations is attached as Exhibit A to the Declaration of Daniel Maguire, dated June 13, 2025 ("Maguire Decl.").

| Reduction (Overstaffing/Unnecessary Hours) | — | 40% |
|---|---|---|
| Reduction (Block-billing/Vague Entries) | | 10% |
| **Final Firm Fee** | — | $104,871.90 |

**TABLE 2: First Liberty Institute[9]**

| Attorney/Paraprofessional | Defendant's Adjusted Rates | Defendant's Total Fees |
|---|---|---|
| David Hacker | $560 (District Court work)/$675 (appellate work) | $907.50 |
| Jordan Pratt | $350 (District Court work)/$589 (appellate work) | $11,130.00 |
| Jeremiah Dys | $350 (District Court work)/$666 (appellate work) | $13,351.00 |
| Ryan Gardner | $285 (District Court work)/$535 (appellate work) | $20,764.75 |
| Amy Stoermer | $75 | $112.50 |
| **Firm Subtotal** | — | $46,265.75 |
| **Reduction (Overstaffing/Unnecessary Hours)** | — | 40% |
| **Reduction (Block-billing/Vague Entries)** | | 10% |
| **Final Firm Fee** | — | $23,132.90 |

**Table 3: Ganguly Brothers, PLLC**

| Attorney/Paraprofessional | Customary Rate | Defendant's Total Fees |
|---|---|---|
| Anjan Ganguly | $395 | $6,241.00 |
| **Firm Subtotal** | — | $6,241.00 |
| **Reduction** | — | — |
| **Final Firm Fee** | — | $6,241.00 |

---

[9] An annotated spreadsheet of First Liberty Institute's billing entries that includes Defendant's rate calculations is attached as Exhibit B to the Maguire Decl.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion for attorneys' fees

and award plaintiffs $134,245.80 in attorneys' fees and $7,166.60 in costs.

Dated: June 13, 2025
         Buffalo, New York

                                        LETITIA JAMES
                                        Attorney General of the State of New York
                                        Attorney for Defendants
                                        BY: */s/ Daniel R. Maguire*
                                        Daniel R. Maguire
                                        Assistant Attorney General of Counsel
                                        Main Place Tower, Suite 300A
                                        350 Main Street
                                        Buffalo, NY 14202
                                        (716) 853-8419
                                        Daniel.Maguire@ag.ny.gov