UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HIS TABERNACLE FAMILY CHURCH, INC. and MICHEAL SPENCER,<br><br>*Plaintiffs*,<br><br>v.<br><br>STEVEN A. JAMES, Superintendent of the New York State Police, in his official and individual capacities; WEEDEN A. WETMORE, District Attorney for the County of Chemung, New York, in his official and individual capacities; and MATTHEW VAN HOUTEN, District Attorney for the County of Tompkins, New York, in his official and individual capacities,<br><br>*Defendants*. | **Case No. 6:22-cv-06486** |

**REPLY IN SUPPORT OF
<u>PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ iii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.  Plaintiffs' Requested Attorney's Fees Are Reasonable. ....................................................... 2

    A.  The Requested Hourly Rates Are Reasonable. ......................................................... 2

    B.  The Hours Expended Are Reasonable. ..................................................................... 7

II. Plaintiffs' Requested Costs Are Reasonable, As The State Agrees. .................................. 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*28th Highline Assocs., LLC v. Roache*,
  2021 WL 12313375 (S.D.N.Y. Dec. 7, 2021) .............................................................. 8

*Abascal v. Fleckenstein*,
  2014 WL 7075580 (W.D.N.Y. Dec. 15, 2014) ........................................................... 6

*Antonyuk v. Chiumento*,
  89 F.4th 271 (2d Cir. 2023) ............................................................................... 3, 10

*Arbor Hill Concerned Citizens Neighborhood Ass'n
  v. Cnty. of Albany & Albany Cnty. Bd. of Elections*,
  522 F.3d 182 (2d Cir. 2008) ............................................................................... 2, 6

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
  537 F.3d 132 (2d Cir. 2008) .................................................................................. 3

*Carey v. Piphus*,
  435 U.S. 247 (1978) .............................................................................................. 1

*Christiansburg Garment Co. v. EEOC*,
  434 U.S. 412 (1978) .............................................................................................. 1

*Espino v. Besteiro*,
  708 F.2d 1002 (5th Cir. 1983) ............................................................................... 1

*Franciscan All., Inc. v. Becerra*,
  681 F.Supp.3d 631 (N.D. Tex. 2023) ..................................................................... 6

*Furtado v. Bishop*,
  635 F.2d 915 (1st Cir. 1980) .............................................................................. 1, 5

*Hardaway v. Nigrelli*,
  No. 22-cv-771 (W.D.N.Y. dismissed Sept. 4, 2024) ................................................ 1

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .............................................................................................. 4

*Hines v. City of Albany*,
  862 F.3d 215 (2d Cir. 2017) .................................................................................. 9

*Lackey v. Stinnie*,
  145 S.Ct. 659 (2025) ............................................................................................ 10

*Leasing Serv. Corp. v. Dickens*,
  1988 WL 151297 (S.D.N.Y. Oct. 20, 1988) ............................................................ 6

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998) .................................................................................. 10

*Louise Trauma Ctr. LLC v. DHS*,
   2023 WL 3478479 (D.D.C. May 16, 2023) ............................................................. 5

*Maceira v. Pagan*,
   698 F.2d 38 (1st Cir. 1983) .................................................................................. 3, 6

*Meeks v. City of Rochester*,
   2023 WL 3962828 (W.D.N.Y. June 12, 2023) ........................................................ 2

*NYSRPA, Inc. v. Bruen*,
   597 U.S. 1 (2022) ..................................................................................................... 5

*NYSRPA, Inc. v. Nigrelli*,
   2023 WL 6200195 (N.D.N.Y. Sept. 22, 2023) ........................................................ 5

*Osterweil v. Bartlett*,
   92 F.Supp.3d 14 (N.D.N.Y. 2015) ........................................................................... 8

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010) ............................................................................................. 5, 9

*Raja v. Burns*,
   43 F.4th 80 (2d Cir. 2022) ....................................................................................... 9

*Safranek v. Wormuth*,
   2024 WL 5186599 (S.D.N.Y. Dec. 19, 2024) ......................................................... 7

*Sekhar v. United States*,
   570 U.S. 729 (2013) .............................................................................................. 10

**Other Authorities**

Maureen Carroll, *Fee-Shifting Shortcuts*,
   60 Harv. C.R.-C.L. L. Rev. 47 (2025) ..................................................................... 5

Hon. Albert Diaz, *Effective Advocacy Before the Fourth Circuit*, *in*
   U.S. Court for Appeals for the Fourth Circuit: Appellate Practice
   Webinar (Sept. 8, 2021), https://rebrand.ly/bsxwuvh ............................................. 8

Ashby Jones, *Three Questions for Quinn Emanuel's John Quinn*, Wall St. J.
   (Mar. 26, 2009), https://tinyurl.com/yck8z7jk ........................................................ 8

Decl. of G. Schaerr, *Franciscan All. v. Becerra*,
   No. 16-cv-108 (N.D. Tex. filed Dec. 23, 2022) ....................................................... 6

## INTRODUCTION

The state's submission is another page out of its well-worn playbook. As Plaintiffs' opening brief explained, and the state does not dispute, New York has an unfortunate history of suppressing disfavored constitutional rights—especially First and Second Amendment rights—only to escape with a mere slap on the wrist when it comes to paying attorney's fees under 42 U.S.C. §1988. That pattern has encouraged the state to continue to enact and enforce unconstitutional laws like the Place-of-Worship Provision at issue in this litigation, and the state now asks this Court for its complicity in that effort. Indeed, according to the state, the Court should award Plaintiffs just 16% of their requested attorney's fees—and ultimately give them less than what the plaintiffs settled for in *Hardaway v. Nigrelli*, No. 22-cv-771 (W.D.N.Y. dismissed Sept. 4, 2024), even though the *Hardaway* plaintiffs did not prevail in their litigation and thus had no entitlement to attorney's fees under §1988 in the first place.

The Court should decline that extraordinary request, as it defies congressional intent and common sense. Congress enacted §1988 to *deter* violations of constitutional rights by rights-violating defendants. *See, e.g.*, *Carey v. Piphus*, 435 U.S. 247, 257 n.11 (1978); *Espino v. Besteiro*, 708 F.2d 1002, 1010 (5th Cir. 1983); *Furtado v. Bishop*, 635 F.2d 915, 918 n.5 (1st Cir. 1980). The paltry attorney's fees that other courts in other cases have allowed the state to pay prevailing parties to date have plainly failed to effectuate that purpose. It thus is time to hold this serial "violator of federal law" accountable, *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978), and the Court should do so by requiring the state to pay Plaintiffs' attorney's fees in full. Those fees reflect reasonable hourly rates and a reasonable number of hours expended. The state's submission does nothing to disturb that conclusion.

**ARGUMENT**

I. **Plaintiffs' Requested Attorney's Fees Are Reasonable.**

   A. **The Requested Hourly Rates Are Reasonable.**

The first step in the fee analysis is determining the "reasonable hourly rate," which is supposed to "approximate" the "free market" rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008). As Plaintiffs have explained, the reasonable hourly rates in this case are the customary hourly rates charged by Plaintiffs' attorneys in all other cases—*i.e.*, the rates reflected on pages 14-15 of Plaintiffs' opening brief—as those are necessarily the free-market rates that "a paying client would be willing to pay" to favorably resolve a case like this one. *Id.* at 190.

The state agrees that Plaintiffs' local counsel—Anjan Ganguly of Ganguly Brothers—is entitled to his customary hourly rate. *See* Opp.4 n.2. But the state insists that Plaintiffs' attorneys from Clement & Murphy and First Liberty Institute do not deserve their customary rates because those rates "exceed the reasonable in-district rates for the Western District." Opp.5. But Clement & Murphy and First Liberty Institute are not in-district law firms, and there is no inexorable requirement that the Court apply in-district rates to out-of-district attorneys. *See, e.g.*, *Meeks v. City of Rochester*, 2023 WL 3962828, at *3 (W.D.N.Y. June 12, 2023) ("[C]ourts need not strictly adhere to the forum rule in all cases."). To the contrary, as the state concedes, this Court has "considerable discretion in determining what constitutes reasonable attorneys' fees." Opp.3. And every relevant factor confirms that out-of-district rates are appropriate for Plaintiffs' out-of-district attorneys here. *See* Mot.18-23.

For instance, the state itself characterizes this "action" as one that "involved complex First and Second Amendment issues." Opp.7. This district does not have attorneys with substantial expertise in those areas, *see* Mot.19-20, and the state does not suggest otherwise, *see* Opp.9

2

(suggesting that Plaintiffs should have hired a law firm "outside the scope of its customary practice"). Furthermore, this action proceeded on a highly accelerated timeline in both this Court and the Second Circuit. *See* Mot.20-21. Plaintiffs thus had no choice but to retain out-of-district specialists. As other courts have recognized in comparable circumstances, "if the client needs to go to a different city to find that specialist, … there is no basis for concluding that the specialist's ordinary rate is unreasonably high," *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983)—least of all when (as here) those specialists achieve a complete victory, which is "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008).

The state claims that Plaintiffs' counsel from Clement & Murphy and First Liberty Institute do not deserve their customary hourly rates for their work in this Court because "this Court was almost certainly going to issue an injunction prohibiting the enforcement of the Places of Worship Provision" anyway since it "had already found" that provision "unconstitutional and issued an injunction prohibiting its enforcement" in *Hardaway*. Opp.7; *see* Opp.11. But as the state acknowledges elsewhere, "*Hardaway* did not include a First Amendment claim," Opp.19, which is the principal claim that Plaintiffs pressed in this Court, *see* Dkt.13-3 at 4-17, and the only claim of Plaintiffs' that the Second Circuit resolved, *see Antonyuk v. Chiumento*, 89 F.4th 271, 345-52 (2d Cir. 2023). By contrast, the *Hardaway* plaintiffs saw their Second Amendment-based preliminary injunction vacated on appeal due to a mootness issue that Plaintiffs' attorneys here successfully navigated around. *See id.* at 343-45. The notion that Plaintiffs' out-of-district attorneys "had no impact" in this Court when their work here set the stage for Plaintiffs' eventual victory therefore blinks reality, as success in this case plainly required far more than replicating the Second Amendment debate that occurred in *Hardaway*. Opp.7.

3

The state acknowledges that out-of-district rates are appropriate for some (though not all) appellate work performed by Plaintiffs' attorneys in the Second Circuit. *See* Opp.7. While that is a step in the right direction, the state's arguments falter again. The state (correctly) concedes that out-of-district rates should apply to the three Clement & Murphy attorneys whose names appear on the Second Circuit brief, but it argues that no other attorney from either Clement & Murphy or First Liberty Institute should receive out-of-district rates for any appellate work because Plaintiffs purportedly failed to demonstrate that they have the "special expertise" necessary to "justif[y] out-of-district rates." Opp.7. Nonsense. As the state conveniently ignores, First Liberty Institute is one of the Nation's preeminent law firms dedicated to religious-liberty issues, and "every attorney" there maintains a law practice "devoted exclusively to First Amendment litigation." Mot.Ex.B. ¶¶3-4. As just discussed, this case ultimately turned on First Amendment arguments alone, confirming that the special expertise of First Liberty Institute lawyers proved critical in this case. Moreover, the other Clement & Murphy attorneys who assisted with the appeal did so as moot-court judges, and each of them has substantial experience practicing and clerking in federal appellate courts—*i.e.*, precisely the sort of experience that prepares an attorney for a successful oral argument in court (which occurred here). *See* Mot.Ex.A ¶¶25-27, 30. Plaintiffs thus have amply demonstrated that all of their out-of-district attorneys had special expertise and that all are entitled to out-of-district rates for their contributions to Plaintiffs' excellent result in the Second Circuit. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.").

The state shifts to arguing that, "[e]ven if the Court concludes that plaintiffs' counsel is entitled to out-of-district rates, the rates sought by plaintiffs far exceed the rates for complex litigation in their home districts," so this Court should reduce those rates accordingly. Opp.8. The

state misses the mark again. Starting with Clement & Murphy, the state principally contends that, in *NYSRPA, Inc. v. Nigrelli*, 2023 WL 6200195 (N.D.N.Y. Sept. 22, 2023)—the case that yielded the Supreme Court's landmark Second Amendment decision in *NYSRPA, Inc. v. Bruen*, 597 U.S. 1 (2022)—the Northern District of New York settled on what it described as "reasonable" out-of-district rates for some Clement & Murphy attorneys, and those rates are lower than what Plaintiffs are seeking here. Opp.8. But those are the very rates that produced the low fee award that *failed* to stop the constitutional violations at issue in this case. The proper way "to deter civil rights violations" by the state, as Congress intended, is to "*increas*[*e*] [the state's] liability," not to replicate fee awards that evidently have had no measurable impact on the state's unconstitutional behavior. *Bishop*, 635 F.2d at 918 n.5 (emphasis added).

In the alternative, the state asserts that, because "Clement & Murphy is based in Washington D.C.,"[1] this Court should apply the so-called "Fitzpatrick Matrix" used by some district courts in that jurisdiction. Opp.8. But the Fitzpatrick Matrix has generated considerable criticism because it "flattens the range of rates for all attorneys with a particular level of experience into a single value"—*i.e.*, treats all attorneys of the same class year as interchangeable—and thus is "contrary to the case-specific analysis the case law requires." Maureen Carroll, *Fee-Shifting Shortcuts*, 60 Harv. C.R.-C.L. L. Rev. 47, 69 (2025); *see, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 555 (2010). Unsurprisingly, then, it is not required even in Washington, D.C. Rather, prevailing parties are free to "provide evidence of the fees charged and received by litigators in cases brought under the fee-shifting statute." *Louise Trauma Ctr. LLC v. DHS*, 2023 WL 3478479, at *4 (D.D.C. May 16, 2023). Plaintiffs have done just that, demonstrating that Washington, D.C.-area litigators charge rates consistent with what Plaintiffs seek here. *See, e.g.*,

---

[1] To be clear, Clement & Murphy is based in Alexandria, Virginia.

*Franciscan All., Inc. v. Becerra*, 681 F.Supp.3d 631, 645 (N.D. Tex. 2023); Decl. of G. Schaerr at ¶¶16-19, *Franciscan All.*, No. 16-cv-108 (N.D. Tex. filed Dec. 23, 2022), Dkt.224-2.

The only response the state musters is that Clement & Murphy is not "entitled" to its "usual rates" because those rates purportedly derive from work for "large corporations," whereas this case involved "civil rights." Opp.9. While the state offers nothing to substantiate that speculation, that gets matters backwards. One of the factors the Court is supposed to consider is whether "acceptance of the case" "preclu[ded] … employment by the attorney[s]" in other cases. *Arbor Hill*, 522 F.3d at 186 n.3. So if Clement & Murphy's attorneys could have worked on cases for large corporations and received payment based on its customary hourly rates but the firm instead chose to devote its time to vindicating Plaintiffs' constitutional rights, then the Court should award Clement & Murphy's commitment to justice for smaller clients with "a fully compensatory fee" calculated at customary rates—consistent with basic opportunity-cost principles—not a partially compensatory fee calculated at bargain rates. *Abascal v. Fleckenstein*, 2014 WL 7075580, at *1 (W.D.N.Y. Dec. 15, 2014); *see also Leasing Serv. Corp. v. Dickens*, 1988 WL 151297, at *7 (S.D.N.Y. Oct. 20, 1988) (noting that "higher compensation" is warranted "in contingent fee arrangements" given "the risk of non-payment assumed by the attorney"). That is especially true given the "undesirability" of this case, *Arbor Hill*, 522 F.3d at 186 n.3, which involved religious-liberty and Second Amendment issues that most lawyers in private practice would rather avoid, *see* Mot.20. It is already difficult enough for "those in smaller communities" who have suffered the deprivation of disfavored constitutional rights to "obtain[] the experienced legal counsel they may need." *Pagan*, 698 F.2d at 40. There is no reason for this Court to compound that difficulty by accepting the state's invitation to shortchange Plaintiffs' experienced legal counsel here.

6

While the state's arguments in favor of reducing Clement & Murphy's appellate fees are unpersuasive, its arguments in favor of reducing First Liberty Institute's appellate fees are virtually nonexistent. The state's only argument is that First Liberty Institute is not entitled to its customary rates for any appellate work because First Liberty Institute is located in the Dallas, Texas, area, where the going rates are comparable to those in Washington, D.C.—and hence the lower rates in the Fitzpatrick Matrix supposedly should govern. *See* Opp.11. That is not how district courts in the Northern District of Texas have approached these issues. *See* pp.5-6, *supra*. This Court should not do so either. Instead, the Court should award First Liberty Institute's attorneys—as well as Plaintiffs' other attorneys—their customary hourly rates in full.

**B.    The Hours Expended Are Reasonable.**

The state fares no better in challenging the reasonableness of the hours that Plaintiffs' counsel expended on this matter. At the outset, the state again does not dispute that Plaintiffs' local counsel—Anjan Ganguly—expended reasonable hours on this case. *See* Opp.12 n.6. But the state declares that "an across-the-board reduction of 30% is warranted on Clement & Murphy and First Liberty Institute's attorneys' fees" because they purportedly spent an "excessive amount of time … litigating this case." Opp.15. That is a bold claim coming from a party that decisively lost this case due to the handiwork of Plaintiffs' attorneys. It is also meritless. The state protests that, during the proceedings in this Court, Clement & Murphy and First Liberty Institute attorneys spent approximately 45 hours preparing the complaint and approximately 80 hours preparing the preliminary-injunction papers, and it suggests—based on nothing more than a citation to a case that "present[ed] no complex or novel issues," *Safranek v. Wormuth*, 2024 WL 5186599, at *5 (S.D.N.Y. Dec. 19, 2024)—that those attorneys should have billed less. *See* Opp.14. As already noted, however, even the state admits that this case *did* "involve[] complex First and Second Amendment issues." Opp.7. The state does not explain why Clement & Murphy and First Liberty

7

Institute should have put in the same amount of work as attorneys in non-complex cases in this undisputedly complex case involving constitutional issues of first impression.

The state also contends that "redundancies continued during the appeal" and that Clement & Murphy spent too much time drafting Plaintiffs' response brief and preparing for oral argument in the Second Circuit. Opp.14-15. The "strongly favorable results" that Plaintiffs' attorneys secured in the court of appeals indicate otherwise. *28th Highline Assocs., LLC v. Roache*, 2021 WL 12313375, at *5 (S.D.N.Y. Dec. 7, 2021). Indeed, as respected litigators have explained, "[t]here's no way to write a great brief without putting in a lot of time, and that's what pretty much every first-rate piece of work requires." Ashby Jones, *Three Questions for Quinn Emanuel's John Quinn*, Wall St. J. (Mar. 26, 2009), https://tinyurl.com/yck8z7jk. Furthermore, Plaintiffs' arguing attorney in the Second Circuit (Erin Murphy) spent just 21 hours preparing for and delivering argument—a number fully consistent with the state's own authorities. *See Osterweil v. Bartlett*, 92 F.Supp.3d 14, 35-36 (N.D.N.Y. 2015) ("Mr. Clement will … be compensated for 20.44 hours" for "the time devoted to the Second Circuit oral argument[.]"). And while the state appears to second-guess the time that Plaintiffs' moot-court judges devoted to this case, that is just an attack on sound appellate practice. As Chief Judge Diaz of the Fourth Circuit recently explained, a good appellate advocate should "[g]et lawyers to moot you who know nothing about the case, but who are willing to prepare as a judge would," because "[t]hey will open your eyes to points (some obvious, others not so much) that you've either overlooked or not emphasized enough." Hon. Albert Diaz, *Effective Advocacy Before the Fourth Circuit*, *in* U.S. Court for Appeals for the Fourth Circuit: Appellate Practice Webinar 1-2 (Sept. 8, 2021), https://rebrand.ly/bsxwuvh. As this Court knows full well, the time and effort that Article III judges devote to their cases is significant. There

8

is no warrant for a downward departure in attorney's fees just because Plaintiffs' attorneys engaged in responsible lawyering.

Undeterred, the state insists that, *on top* of a 30% across-the-board reduction, "the Court should *further* reduce the billed hours of Clement & Murphy and First Liberty Institute by 10%" because of so-called "vague entries" and "block-billing." Opp.16-17 (emphasis added). Wrong again. The supposedly vague entries are ones that provide descriptions like "[p]repare for moot" and "[d]raft response brief." Opp.17. The state does not explain why those entries are vague— nor could it do so with a straight face, as it is simultaneously arguing that those entries are sufficiently clear to protest the amount of time that Clement & Murphy spent preparing for moot courts and drafting briefs. The state cannot have it both ways. Moreover, the state overlooks that block-billing "is by no means prohibited in this Circuit," *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022), and it forgets that it is *already* receiving a significant discount on numerous entries. After all, when recovering attorney's fees, prevailing parties are entitled to calculate those fees at "current rates." *Perdue*, 559 U.S. at 556. Here, however, Plaintiffs are requesting fees primarily based on their attorneys' prevailing rates in 2022 and 2023 (when the bulk of the work in this case occurred), and many of those rates are *already* discounted by 10% or more.[2] *See* Mot.15-17. The state offers no explanation why any further reduction is appropriate.

\* \* \*

As all of this underscores, Plaintiffs are entitled to the $817,636.50 in attorney's fees that they requested in their opening brief, with $664,477.50 allocated to Clement & Murphy, $144,390.00 allocated to First Liberty Institute, and $8,769.00 allocated to Ganguly Brothers.

---

[2] The state is also receiving a discount because Plaintiffs are not seeking attorney's fees for the preparation of this reply brief, even though they are entitled to such fees. *See Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017).

9

While the state would prefer to limit its liability to just $134,000 because that figure is close to (but less than) the $150,000 in attorney's fees for which the plaintiffs in *Hardaway* settled, that argument is a non-starter. The Second Circuit vacated this Court's preliminary injunction in *Hardaway* as moot in light of an intervening legislative change. *See Antonyuk*, 89 F.4th at 343-45. The *Hardaway* plaintiffs thus had no entitlement to attorney's fees *at all* because they did not even qualify as prevailing parties. *See Lackey v. Stinnie*, 145 S.Ct. 659, 671 (2025) ("Because the [plaintiffs] in the present case gained only preliminary injunctive relief before this action became moot, they do not qualify as 'prevailing part[ies]' eligible for attorney's fees under §1988(b)."). The notion that Plaintiffs here—which, as everyone agrees, *are* prevailing parties—are entitled to even *less* in attorney's fees than the gratuitous amount given to the *Hardaway* plaintiffs "sounds absurd, because it is." *Sekhar v. United States*, 570 U.S. 729, 738 (2013).

## II.     Plaintiffs' Requested Costs Are Reasonable, As The State Agrees.

Plaintiffs are also entitled to "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). In their opening brief, Plaintiffs sought $7,166.60 as reimbursement for such costs. Because the state does not object to those costs, *see* Opp.19 n.7, the Court should award them in full too.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an award of attorney's fees in the amount of $817,636.50, along with another $7,166.60 to reimburse costs.

Dated: July 15, 2025

Respectfully submitted,

/s/ Anjan K. Ganguly

D<small>AVID</small> J. H<small>ACKER</small>
J<small>EREMIAH</small> G. D<small>YS</small>\*
R<small>YAN</small> G<small>ARDNER</small>\*
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway
Suite 1600
Plano, TX 75075
(972) 941-4444

A<small>NJAN</small> K. G<small>ANGULY</small>
GANGULY BROTHERS, PLLC
140 Allens Creek Road
Suite 220
Rochester, NY 14618
(585) 232-7747

E<small>RIN</small> E. M<small>URPHY</small>\*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900

\**Pro hac vice*

*Counsel for Plaintiffs*

11